# WASHINGTON WOLF
## *v.*
# WELLS WILLITS.

1. CONTRACTS — *construction thereof* — *and herein, what constitutes a contract.* Suit was brought for a failure to perform this agreement:

"Washington Wolf, 170 to 200 good fat hogs, delivered next packing season, at four dollars per hundred pounds, net weight, and to have five hundred dollars on above contract between this and the first of August next.

"May 28, 1856.          .                              "WASHINGTON WOLF.
                                                       "WELLS WILLITS."

*Held*, that this is a valid contract. The subject matter of it was the delivery of good fat hogs the next packing season, at the price of four dollars per hundred net weight. They were to be delivered to Wells Willitts. Wolf is first named in the contract, and by its true sense and reading he is the actor. There is no doubt who was to deliver, nor any who was to pay, and how much.

2. PAROL EVIDENCE — *in explanation of written contracts.* If the contract was obscure, it could be illumined by proof.

3. TENDER — *when not necessary.* Where a party enters into a contract to deliver a lot of hogs at a future time, a given portion of the price to be paid at a stipulated time, the purchaser is not bound to tender the balance of the money which the vendor would only be entitled to receive upon the delivery of the hogs, in order that he may recover damages for their non-delivery.

4. TIME — *in the performance of a contract — when waived.* Where, by the terms of a contract of purchase of property, the vendee was to pay a certain portion of the money within a specified time, and which was before the day fixed for the delivery of the property, if he does not pay the money within the specified time, but pays it afterwards, and it is accepted by the vendor as a payment on the contract, such acceptance by the vendor would be a waiver by him of the provisions of the contract in regard to the time within which such payment was to have been made, and the contract would be as binding upon the parties as though the money had been paid within the time therein stipulated.

5. CONDITIONS PRECEDENT — *when proof of them waived.* Where a vendor of personal property, which by the terms of the contract of sale is to be delivered at a future day, notifies his vendee that he will not deliver the property, such notice will dispense with the necessity of proof by the latter, in an action to recover damages for its non-delivery, that he was ready and willing to receive and pay for the property at the time it was to have been delivered.

WRIT OF ERROR to the Circuit Court of Rock Island county; the Hon. J. W. DRURY, Judge, presiding.

This was an action of assumpsit originally commenced in the Circuit Court of Mercer county, by Wells Willitts against Washington Wolf. The cause was removed on change of venue into the Circuit Court of Rock Island county, where it was tried before a jury.

The action was brought to recover damages for an alleged failure on the part of the defendant to deliver to the plaintiff a lot of good fat hogs, according to the stipulations in this instrument of writing:

" Washington Wolf, 170 to 200 good fat hogs, delivered next packing season, at four dollars per hundred pounds, net weight,

and to have five hundred dollars on above contract between this and the 1st day of August next.

WASHINGTON WOLF,

"May 28, 1856.       WELLS WILLITTS."

It is alleged in the declaration that this contract required the defendant to deliver to the plaintiff the hogs during the packing season, which he avers commenced on or about the 25th of November, 1856, and closed on or about the 1st day of February, 1857. The plaintiff also avers the payment of five hundred dollars to the defendant before the first day of August, and a readiness to pay the balance when the hogs should be delivered.

The defendant pleaded the general issue. On the trial the plaintiff offered in evidence the instrument above mentioned, which was objected to by the defendant; but his objection was overruled, and he excepted.

The plaintiff then called *George W. Warner*, who testified: As near as he can recollect he had a talk with Wolf in fore part of September, 1856, in which Wolf told him he had sold his hogs to plaintiff, and that plaintiff was to pay, and had paid *Levi Willitts* $500 for him on hog contract; thinks he recollects that defendant said Levi Willitts had given him credit for $500 on a note held by Levi Willitts against defendant, but is not positive, but the defendant said at the same time that plaintiff had not paid the money according to contract.

In January afterwards, the witness had another conversation with defendant, but cannot remember much about it; thinks defendant told him he had sold his hogs to Gayle, and paid Levi Willitts $1,000.

In the first conversation, the defendant alleged as a reason for not delivering the hogs, that plaintiff had not advanced money to buy stock hogs with, according to his agreement. Levi Willitts died in March, 1858. Plaintiff was in the pork packing business.

*Jacob Kerlin* testified: That in the last of August or first of September, 1856, he was talking with the defendant about

hogs; I asked him if he had sold; he said he had, and told what he got. I told him I thought there was no object in selling at that price; he said he was owing Levi Willitts some, and wanted the money, and the object was that he had got $500 on his pork; said he was to have $4 per hundred. Packing season commences from 20th November to 1st December, and ends 1st February; saw plaintiff receiving pork at New Boston that season; don't know much about the price of pork.

On cross-examination, this witness stated that there never was much love between defendant and himself; that he brought up the plaintiff's witnesses to court; that he did not swear at the last term that defendant told him he had got or was to have $500. Has talked over about the $500 with plaintiff several times. Did not tell Thomas Marlett, when I was coming to court last term as a witness, that I did not know what in hell Willitts wanted with me, for I did not know anything about it, nor that I did not know whether plaintiff had paid anything or not.

*Benjamin F. Wemper* was next called by plaintiff, who testified: That he had lived in New Boston for several years, and that plaintiff lived there too and packed pork there from 1st November to 1st February, and later; there was strife that season between plaintiff and the witness in purchasing pork; five dollars was an average price—the ruling price for the season; only a few lots were sold higher; the average weight of hogs that season was from 170 to 200 pounds; does not know how many hogs plaintiff packed that season; he packed a good many hundred; does not know of plaintiff's paying any money for pork that season; he was a buyer in the market; we bought upon credit and for cash.

This was all the testimony on the part of the plaintiff.

The defendant then called *John Venable*, who testified: That he had lived in Mercer county five years, and knew the parties. On the first of December, A. D. 1856, was in plaintiff's store in New Boston, Illinois? The plaintiff asked me the reason why defendant did not let him have the hogs in controversy. Witness told him that defendant said it was because he, plaintiff,

had not paid the money according to agreement. He, plaintiff, replied that he did not think it ought to make any difference with him so as he did not lose anything by it.

*David Finch* was next called by defendant. Has known the parties 10 or 15 years, and have lived in Mercer county twenty odd years. Wells Willitts, the plaintiff, came to my house in the forepart of December, 1856. I then lived about three miles from New Boston. He asked me when I was going to drive my hogs to the slaughter yard to have them butchered. He said he was on his way to Washington Wolf's, the defendant, and he understood that defendant was not going to let him have the hogs that he had contracted for, and he was going down to make him a tender of money on the contract, and then if he did not let him have them he should commence a suit against him. He then started in the direction of defendant's house.

*Thomas Wolf* was next called by defendant. He testified: That in the forepart of December, 1856, the plaintiff was at his father's (defendant's) house, four miles from New Boston. He came from the direction of David Finch's house, who has just testified. Plaintiff told defendant he had come to see him *about the hogs.* Father told him he had not paid according to contract. Plaintiff said, if father would show him he had sustained damages by his (plaintiff's) not paying the money according to the contract, he would not contend for the hogs. Father told him he had sustained damages from his not paying the money as he had agreed, and refused to let him have the hogs.

On cross-examination, this witness stated that this talk was in the evening before sunset. He had been down to the yard feeding hogs, and was returning with his father toward the stable. I went on to feed the stock hogs, and left plaintiff and father talking. Father sold his hogs that season to Gayle, of Keithsburgh.

*William Gayle* was next called by defendant. Has known the parties many years. Levi Willitts was uncle of plaintiff. He died about a year ago last March. I was a pork packer and buyer in Keithsburgh in 1856 and 1857, and was more

extensively engaged in the business than any other person in Mercer county. Keithsburgh is in Mercer county, about six miles below New Boston, on the Mississippi river. Higher prices were paid for pork there than anywhere else in that county.

I paid from four to five dollars per hundred—five the extreme—during the pork packing season of 1856 and 1857. In Keithsburgh, at the commencement of the pork packing season of 1856, pork was worth only $4 per hundred. Hogs weighing 180 pounds were worth twenty-five cents less per hundred. The defendant then read the contract to Mr. Gayle, and asked him what kind of hogs therein mentioned should average to fill it, and he answered 125 pounds, which answer the court excluded from the jury, against the objection of the defendant, who excepted.

Defendant next called *Thomas Marlett*, who testified: That he had known the parties to this suit about 30 years, and has resided in Mercer county since 1849, and has known the witness Kerlin, for several years. At the last term of the Mercer Circuit Court, he went there with Kerlin as a witness. They were both witnesses. Kerlin said he had been to the plaintiff to let him off. He said he did not know what in the devil, or what in hell Willitts wanted with him, for he did not know anything about it.

On cross-examination, he stated he was brother-in-law to defendant; is a farmer and minister, and is confident he has stated the conversation correctly. He used the words devil or hell; not certain which.

The defendant here rested.

The plaintiff then recalled *Kerlin*, who explained about what he told Marlett. And Marlett also explained.

This was all the evidence in the case.

The court then gave the following instructions on the part of the plaintiff, against the objection of defendant:

1. "In this case the jury, on behalf of plaintiff, are "instructed: That the contract offered in evidence is a valid "and binding contract; that thereby the defendant agreed to

" deliver to plaintiff 170 to 200 good, fat hogs, at the packing " season next following the date of said contract, at four dol- "lars per hundred pounds, net weight; and that, by said " contract, the plaintiff agreed to receive said hogs at the time " aforesaid, and pay the price aforesaid therefor to defendant, " and that plaintiff was to pay the defendant on said contract " the sum of $500, between its date and the first of August "next thereafter."

2. If, from the evidence in this case, the jury believe that the plaintiff made such a payment upon the written contract as entitled him to receive the hogs mentioned in said contract, it was not necessary in order to lay the foundation for a recovery for the non-delivery of the hogs, that the plaintiff should tender to the defendant any of the money which he might be entitled to receive upon the delivery of the hogs; and if the plaintiff made such a tender, or asserted his intention to do so under a belief that it was necessary for him to do so in order to perfect his right of action on said contract, such tender, or asserted intention to make such tender, will in no wise impair or strengthen the right of the plaintiff to recover in this suit.

3. If, from the evidence in this case, the jury believe that the plaintiff, after the execution of the contract read in evidence and before the packing season then next following began, paid the defendant the sum of five hundred dollars on such contract, and that the defendant accepted such money as and for a payment thereon, then such acceptance of said sum, if after the last day of July, A. D. 1856, would be a waiver by the defendant of the provisions of the contract in regard to the time in which said sum of five hundred dollars was to have been paid, and said contract, under such circumstances, would be as binding on the parties thereto as though such payment had been made within the time limited by the contract.

4. If, from the evidence in this case, the jury believe that the defendant, in August or September, 1856, admitted that the plaintiff had advanced or paid to him the sum of $500 on

the contract read in evidence in this case, then the legal presumption is (unless limited or qualified by such admission in respect to time), that such advance or prepayment was made within the time limited and fixed in said contract.

5. If, from the evidence in this case, the jury should come to the conclusion that the $500 mentioned in the contract given in evidence in this case was not paid to the defendant between the date of the contract and the first day of August thereafter; still, if from the evidence the jury believe that said sum of $500 was afterwards, and before the bringing of this suit, paid by plaintiff to defendant in said contract, then the plaintiff, under the pleadings in this case, would be entitled to recover of said defendant said sum of $500, without regard to other damages that the plaintiff claims in this case.

6. In this case slight evidence is sufficient to show that the plaintiff was ready and willing to receive the hogs mentioned in the contract, at the time provided for their delivery; and if, from the evidence in this case, the jury believe that the plaintiff, at New Boston, during the packing season of 1856–7, was a pork buyer and packer, and that he did buy and pack several hundred hogs during the packing season, such evidence tends to show that the plaintiff was, during that packing season, ready and willing to receive and pay for the hogs mentioned in the contract.

7. If, from the evidence in this case, the jury believe that the defendant, during the packing season mentioned in the contract, informed and notified the plaintiff that he would not deliver the hogs specified in said contract, such refusal and notice by defendant would dispense with any proof on the part of plaintiff that he was, during said packing season, ready and willing to receive and pay for said hogs.

8. It is not the law that, because a witness was contradicted by another witness, that the contradicted witness is thereby impeached; but in all cases of contradictory statements, or seeming contradictory statements, it is a question for the jury to determine how far they impair or affect the testimony of the witness sought to be impeached; and if, on the whole, the jury

believe that such contradictions or seeming contradictions do not impair the credit of the witness, it is the duty of the jury to give his testimony full weight as that of any other witness.

To the giving of which instructions, and each one thereof, the defendant excepted.

The defendant then asked the court to give the following instructions, and those marked on the margin "refused," were refused, and those marked "given," were given; proper objections and exceptions were made at the time.

1. That testimony is one thing, and evidence may be different and something else; that the testimony in this case is that to which the witnesses swear, and the evidence is the convictions produced upon their minds by the whole testimony in *Given.* the case. Wherefore, should their convictions from such testimony differ from the testimony in the case, they should make their verdict from such convictions, though differing from the testimony, as such convictions are the evidence in the case, and they have been sworn to try it by the evidence and not the testimony.

2. That they are the sole judges of the credibility due the testimony of the witnesses, and are not bound to take as evidence that of any witness, though not formally impeached by the testimony of any other, that his character in his neighborhood for truth and veracity is such, and so bad, that the impeaching witness would not believe him under oath, *Given.* if they believe from either, any or all of the following causes that his testimony is untrue, to wit:

His conduct on the stand;

His statements when testifying;

His desire to serve one party to the detriment of the other;

His prevarication, hesitation or reluctance in answering the questions of one party; his eagerness or desire to answer questions more favorably for one party than the other; or because his testimony has been contradicted by another witness in the case; or because his testimony is rendered so improbable by other evidence in the case; or because they believe, from the evidence in the case, that such witness has testified differently

from statements formerly made by him, on denying having made such statements.

3. That even though they should believe, from the evidence, that defendant made admissions, yet if they, from the whole testimony in the case, or the facts and circumstances thereby proven, disbelieve such admissions, they should disregard them in making their verdict, though made by defendant. So, *Given.* should they believe, from the evidence, that defendant admitted that he had received $500 on the contract, yet if they from the testimony of Venable, Finch, Thomas Wolf, William Gayle, and the other witnesses in the case, or from that of either or any of them, or from the facts or circumstances proven in the case, do not believe that he received the $500, they are, under such circumstances, bound to find a verdict for the defendant.

The court will instruct the jury that, even should they believe, from the evidence, that Wells Willitts paid Levi Willitts $500, and Levi Willitts gave Washington Wolf a credit therefor, without the assent of Washington Wolf, said Wolf is in no way responsible therefor.

5. That if the evidence as to the alleged payment of $500, by plaintiff to defendant, is so unsatisfactory, uncertain, or contradictory that they cannot, from the evidence in this case, *alone,* determine fully, clearly, and to their full satisfaction, that it was so paid, they are bound, under such circum-*Given.* stances, to find for the defendant, as they will be if the evidence in relation to such alleged payment be so balanced that they *cannot therefrom alone say upon their oath* that it clearly, fully and satisfactorily preponderates in favor of plaintiff.

6. The court will instruct the jury that, if they believe, from the evidence and nothing else, to their full satisfaction, that the plaintiff was during the *whole time* from on or about *Given.* the 1st day of November, A. D. 1856, until on or about the 1st day of February, A. D. 1857, at New Boston, *willing and able* to receive and pay for the hogs when so received, they are, under such circumstances, bound to find a

verdict for the defendant, unless they believe, from the evidence, that the contract was terminated by the acts or declarations of defendant before that time.

7. That it is incumbent on the plaintiff to fully and clearly and to their satisfaction, by the evidences and witnesses sworn in the case, and nothing else, prove his case, and every *Given.* material fact thereof, and not on the defendant to dispute it, or any part thereof; and that, if the plaintiff has not in such manner proven every such part of his case, they are bound in such circumstances, to find for the defendant.

8. That if they believe, from the evidence, that plaintiff made admissions or performed acts with regard to the alleged payment of $500, such admissions and acts are proper *Given.* evidence for their consideration in making their verdict in this case; and if they believe therefrom that he had not, when so acting and speaking relative thereto, paid said $500, they will be bound, under such circumstances, to find for the defendant.

9. That should they not believe, from the evidence, that defendant admitted in September, 1856, or at any time thereafter, that he did receive $500 from the plaintiff, but also that he did receive it, such testimony, even if so believed, *Refused.* is not of itself evidence that it was paid before the first day of August, 1856, and that unless they believe, from the evidence and nothing else, that it was paid before that day, they are bound, under any circumstances, to find for the defendant, on the contract.

10. That unless they believe, from the evidence and nothing else, to their full satisfaction and clearly, that $500 was, before the 1st day of August, A. D. 1856, paid by plaintiff *Refused.* to defendant, on the contract, they cannot find anything for the plaintiff, though they might, from the evidence, believe that that amount was so paid on that day or thereafter.

11. The court will instruct the jury that they are, under any circumstances, bound to find for the defendant, unless they believe, from the evidence, that plaintiff paid him $500 on

*Refused.* the contract, between the 28th day of May, 1856, and the 1st day of August thereafter, and before said 1st day of August.

The jury returned a verdict for the plaintiff, assessing his damages at $797.50. A motion for a new trial was overruled, and judgment was entered upon the verdict.

The defendant, thereupon, sued out this writ of error. The principal question presented upon the record, is, as to the validity of the writing sued upon, as a contract.

Messrs. WEAD & COCHRAN, for the plaintiff in error.

The ground of the plaintiff's recovery was, that the contract required Wolf to deliver to Willitts the hogs during the packing season at his place in New Boston, and that he (Willitts) did, before the first of August, 1856, pay to Levi Willitts for Wolf $500.

We contend the contract will not bear any such construction. It is not a contract of sale, nor an agreement by one to deliver hogs to the other.

This is no agreement to deliver hogs at any time or place. The statement is, " hogs delivered next packing season." What packing season? Packing season for what?—for pork, for beef, for hides, for butter, for salt, for cheese, for apples? Who shall say? Can the court know judicially? If the pleader, who drew the declaration, had stated that it meant the next season for packing pork, and that season arrived in December or January next thereafter, then there would have been no doubt. But the pleader did not do this, and the court cannot judicially know that the hog packing season was meant.

Again, were the hogs to be dead or alive? Who knows? In the case of *Whitson* v. *Culbertson*, 7 Ind., under a contract to deliver twenty-five head of fat hogs at four dollars *net* per hundred, it was held that " dead hogs" was meant, hogs without blood, hair or entrails, ready for cutting up. So in this case, the hogs to be delivered were fat hogs at four dollars per hundred pounds " *net*" weight. And yet all parties have treated this agreement so far as calling for live hogs.

. Again, *where* were these hogs to be delivered? Was it at the residence of defendant, or at the residence of plaintiff? The declaration fails to state. It does not show *where* the delivery was to be made, and in this respect it is deficient. By our law, the delivery was to be made at the residence of the defendant. Now there is no allegation in the declaration as to the place of residence of either party. Suppose, in point of fact, the plaintiff lived in California or Ohio, was the defendant bound to take the hogs to him? The declaration does not show where plaintiff resided. It should have done this before a recovery could be had. The statute of 1845, p. 386, secs. 12 and 13, provides that contracts for the delivery of property are payable at the residence of the promisor, and so it was held in the following cases: *Woods* v. *Dial*, 12 Ill. 72; *Lobdell* v. *Hopkins*, 5 Cowen, 516; *Vance* v. *Bloomer*, 20 Wend. 196; 2 Kent's Com. 505.

We insist the writing does not constitute a contract; it is too vague and uncertain.

Mr. J. J. BEARDSLEY, for the defendant in error.

It is objected that this is no contract. The defendant in error insists it is a valid contract; that by its terms Washington Wolf agreed to deliver 170 to 200 good fat hogs at the time and price mentioned therein.

And to whom is this promise made? Manifestly, indeed necessarily, to Wells Willitts, the other and only other party to the contract.

The contract sets out with the name of Wolf, who assumes, by the phraseology employed, to do something; what? Certainly not to pay the five hundred dollars; but to deliver the hogs, and deliver them to Willitts; and Willitts, whose name does not appear in the body of the contract, by his signature thereto, agrees to pay the five hundred dollars, of course, to Wolf, he being the only other party to the contract.

It is unnecessary with this court to cite authorities in relation to the interpretation of contracts like the one before it; nor need the court be reminded of its duty to sustain and give

effect to all contracts (other than unlawful) when the intent of the parties can be ascertained.

But we insist, if there was any doubt as to which of the parties was to do the one thing or the other mentioned in the contract, parol proof might be admitted to explain the ambiguity. This proof will be found supplied in the record, without objection on the part of the defendant below.

Mr. JUSTICE BREESE delivered the opinion of the Court :

This was an action of assumpsit for a failure to perform this agreement :

" Washington Wolf 170 to 200 good fat hogs, delivered next packing season, at four dollars per hundred pounds net weight, and to have five hundred dollars on above contract between this and the 1st day of August next. May 20, 1856.
                "Signed, WASHINGTON WOLF."
" WELLS WILLITTS."

The declaration alleges this contract required the plaintiff in error to deliver to the defendant in error the hogs during the packing season, and alleges that he paid plaintiff in error before the first of August, five hundred dollars. The plaintiff in error insists that it is not an agreement to deliver hogs at any time or place. He asks, " what packing season? packing season for what? who shall say?" We suppose, if the contract is obscure, it can be illumined by proof. All written contracts must be construed with some reference to their subject matter. The subject matter of this contract was the delivery of good fat hogs the next packing season at the price of four dollars per hundred net weight. They were to be delivered to the defendant in error. The plaintiff is first named in the contract and by its true sense and reading he is the actor. There is no doubt who was to deliver, nor any who was to pay, and how much. The declaration avers that the packing season commenced on or about the 25th of November, 1856, and closed on or about the first day of February, 1857. Within this time the plaintiff in error could perform his contract. The declaration

also alleges the payment of the five hundred dollars, and a readiness to pay the balance, when the hogs should be delivered.

The plaintiff did not deliver the hogs or any part of them, and a verdict was rendered for defendant in error for the amount of damages the jury considered he was entitled to from the evidence.

There is some conflict of testimony not very important, which we will not attempt to argue or reconcile. The weight of it is undoubtedly with the party recovering the verdict, and we cannot interfere to upset it.

The credibility of the witnesses was for the jury.

The instructions given for the defendant in error correctly stated the law of the case. Not being able to perceive that any principle of law has been violated in the case, or any injustice done, the judgment must be affirmed.

*Judgment affirmed.*