(81 South. 251)

Nos. 21752 and 22263.

MECHANICS' BANK OF McCOMB CITY, MISS., v. VAN ZANT et al.

(Feb. 3, 1919. Rehearing Denied March 5, 1919.)

*(Syllabus by Editorial Staff.)*

1. FRAUDULENT CONVEYANCES &#9901;295(1)—SUFFICIENCY OF EVIDENCE.

In an action on a note, with attachment, and against a third party on the ground that defendant's conveyance of a sawmill property, etc., to him, was fraudulent and simulated, evidence *held* to show fraud and simulation.

2. FRAUDULENT CONVEYANCES &#9901;160—SALE—REQUISITES — TIME OF DISCOVERY OF FRAUD.

Though an alleged fraudulent buyer of debtor's sawmill property, etc., acted in good faith, there was no sale, where no price was ever fixed until execution of an act of sale after buyer had knowledge of the intended attachment of property by another creditor and the financial troubles of debtor.

3. PLEDGES &#9901;11—RETENTION OF POSSESSION.

Under Rev. Civ. Code, art. 3152, there could be no pledge of property of a debtor to his creditor, where the debtor remained in possession of property.

Appeal from Twenty-Sixth Judicial District Court, Parish of Washington; Joseph B. Lancaster, Judge.

Proceeding by attachment by the Mechanics' Bank of McComb City, Miss., against W. J. Van Zant and Sam Sheridan. Judgment for defendants, and plaintiff appeals. Reversed, and judgment in rem ordered for plaintiff avoiding an alleged simulated and fraudulent transfer and rendering executory its lien as attaching creditor upon the property seized.

L. Brame, of Jackson, and Ott & Johnson, of Franklinton, for appellant.

Bascom D. Talley, of Bogalusa, for appellees.

DAWKINS, J. Plaintiff, Mechanics' Bank of McComb City, Miss., proceeded by attach-

ment against W. J. Van Zant, likewise a resident of the state of Mississippi, upon a promissory note for the sum of $2,203.57, and seized certain property in the parish of Washington, alleged to belong to said defendant. Sam Sheridan, a resident of the said parish of Washington, was also made a party defendant, and an alleged transfer of the seized property to him by Van Zant was attacked as simulated and fraudulent.

Van Zant appeared, and, after excepting to the petition on the ground that it disclosed no cause of action, admitted his signature to the note sued on, and that he was a resident of the state of Mississippi, but otherwise denied any indebtedness to plaintiff. He further averred that the property seized belonged to his codefendant, Sam Sheridan; that he "turned the mill over to him in truth and in fact, both on January 1, 1914, and again on January 10, 1914; and that, when he heard the bank was about to seize the mill, he gave the deed on or about January 22, 1914." He denied any intention to defraud plaintiff, but claimed that he acted merely for the purpose of protecting Sam Sheridan, "who actually had the property in pledge, and this title was given to the pledged property in settlement of the just debt for which the property had been legally, fairly, and in good faith pledged to Sam Sheridan." He prayed that the attachment be dismissed, and that he receive $250 of the plaintiff, damages for attorney's fees.

Defendant Sheridan also excepted that the petition disclosed no cause of action as to him, and on the further ground that "no attachment, notices of seizure, etc., have been served upon this defendant, and, as to him, the attachment must fall." He then denied, for want of information, the claim of indebtedness against Van Zant, and averred that the mill had been turned over to him in payment of a just debt, substantially in the same language as that used in the answer of

defendant Van Zant; that he had made a contract with his codefendant on April 15, 1913, under the terms of which he was to furnish logs for said mill at the price of $9.50 per thousand, delivered at the mill, and in which it was stipulated that, in event Van Zant failed to pay therefor as provided, he (Sheridan) should have the right to take possession of said mill; and that he had taken possession of said mill in accordance with the terms of said contract, and was acting in entire good faith. He reconvened for damages in the sum of $2,500.

Defendant Van Zant was indebted unto the plaintiff in the sum of $2,376.61, with 8 per cent. interest from December 1, 1913, and 10 per cent. attorney's fees, as evidenced by his note for said amount, dated at Mc-Comb City, Miss., March 27, 1911, due one year after date, found in the record. This indebtedness grew out of transactions and sawmill operations in the state of Mississippi, and after this suit was filed there was realized from the sale of certain mortgage property in that state the sum of $200, which was credited on the note as of date February 11, 1915.

In the spring of 1915, Van Zant came to Washington parish, La., and, on the 15th of April of that year, entered into a contract with Sam Sheridan, the other defendant herein, by which Sheridan bound himself to sell and deliver to Van Zant, at a mill to be erected by the latter, all of the pine and cypress timber over ten inches in diameter on certain described lands. Appropriate provisions were made for the scaling and keeping a record of the timber delivered. Van Zant bound himself to erect said mill on or before the 1st day of October, 1913, and to pay $9.50 per thousand feet on the 1st day of each month for all timber delivered the month preceding.

It was further provided that if Van Zant should fail to erect the mill, as provided, or should fail to make payments when due, "and if ten days elapsed after the first of the month and the payment be not made, the contract becomes immediately executory for the whole, and the said Sam Sheridan may at once take possession of the entire sawmill and other property located upon the said land to secure the payments due and to become due under this contract." Ten acres of land, to be selected by the parties, was leased to Van Zant for a mill site, without additional cost.

The mill was erected and commenced operations some time in October; Sheridan started delivering logs in September, and made deliveries as follows:

| | | | |
|---|---|---|---|
| September | 32,668 at $9.50— | $ | 310.34 |
| October | 104,699 " " " | | 994.63 |
| November | 107,966 " " " | | 1,025.67 |
| December | 53,926 " " " | | 512.29 |
| January | 57,702 " " " | | 548.17 |
| Total | | | $3,391.10 |

As against this, Van Zant paid him in cash, as follows:

| | |
|---|---|
| October 1st | $ 150.00 |
| November 18th | 350.00 |
| December 17th | 617.30 |
| January 17th | 225.00 |
| Total | $1,342.30 |

Deducting cash paid from the amount of the logs delivered, leaves a balance of $2,048.80, due Sheridan on account of the logs alone at the date of the seizure. There were other transactions between the parties by which debits and credits in favor of each arose, not necessary to mention. Sheridan also furnished a portion of the money with which to pay the freight on the mill machinery, and, in addition, supplied the teams for hauling it to the mill site, for which he made a charge of $168.

With the exception of the credits for work done by Van Zant, as above indicated, the items mentioned were all that were ever paid to Sheridan.

L. Brame, counsel for plaintiff, met Van Zant in McComb City, Miss., on December 9, 1913, and endeavored to reach some sort of adjustment with him of the indebtedness due the bank. Nothing came of the effort, however; in fact, Van Zant failed to keep an appointment for 2 o'clock on that day, and was not again seen by Brame. The latter returned to Jackson, Miss., and on December 23d sent the claim to L. W. McDougal at Bogaloosa for collection. There is nothing in the record to show what steps were taken by Mr. McDougal looking toward the collection of the debt, until the filing on the 17th day of January, 1914, of the attachment proceedings which were dismissed on motion by the lower court, prior to the filing of the present suit. For some reason, no effort was made to serve this original process until the 21st or 22d of January. In the meantime, that is, between the date of the interview between Van Zant and counsel for plaintiff, in Mississippi, and the filing of the suit, it is claimed that the transfer, sale, or pledge (whatever it may be termed) of the property, took place. It is contended by Sheridan that it was turned over to him first on the 1st of January, 1914, again on January 10th, when he actually took possession, and again by the deed or giving in payment of January 22, 1914. However, Van Zant continued in possession, and ran the mill until it was seized by the sheriff. He shipped the lumber in his own name, and continued to pay Sheridan as he had done before. No definite price was agreed upon between the parties until the act of January 22d was executed.

[1] Of course, it is well recognized that fraud and simulation are hard to prove, since the minds of individuals cannot be probed to ascertain their intentions, when they are denied, and it is only by putting together the circumstances which surround their conduct, as well as their words, that the truth may be ascertained. There are some significant circumstances, independent of the admitted facts, which we think it worth mentioning. Notwithstanding Sheridan testified that he thought Van Zant was a wealthy man, from the very inception of their relations, circumstances developed which should have convinced him otherwise. Van Zant even borrowed from him the money with which to pay the freight on the machinery, and Sheridan furnished the teams for its hauling to the point of erection, for which he was never paid, except as above set forth. Again during the months of September and October, more than $1,200 worth of timber was delivered, and only $150 paid thereon, and Sheridan says that Van Zant each month begged for time until he could get his mill running and lumber shipped. Yet, in his testimony, Sheridan says Van Zant offered to pay him every day if he wanted it. Shortly after the very time in December when substantial payments had commenced, it is claimed that Van Zant saw that his proposition was a failure, and voluntarily turned the mill over to Sheridan on January 1, 1914, almost over his protest, according to the latter. Van Zant had been to Mississippi, and knew that he had been unable to stay the hand of his creditor there, and had left under circumstances in which any normal person would have looked for trouble. It is again rather singular that the purported transfer became so well noised around among the employés of the defendants with such particularity that they all remembered the dates very definitely. No explanation is offered for the delay from January 17th to 22d in serving the writs of attachment, or for the sheriff's office advertising the intended seizure to the employés of Van Zant, as was done, or for having intrusted the execution of that writ to the son-in-law of one of the defendants, with whom the other defendant boarded. As might have been expected, the information was conveyed to the defendants in advance

of the actual seizure, and the record speaks for itself as to the frenzied efforts which were thereafter put forth to escape the effects of the writ.

[2, 3] From a careful reading of the record, we are not impressed by either the ignorance or good faith of Sheridan, which is stressed by the court below. But, conceding that he was in good faith, according to his own testimony, there was no sale, because no price was ever fixed until the execution of the act of January 22d, after it is admitted he had knowledge of the intended seizure, and the financial troubles of Van Zant. There was no pledge, because Van Zant, the debtor, remained in possession of the property. R. C. C. art. 3152.

After he became aware of the impending seizure and the financial status of Van Zant, the transfer of January 22d was a legal fraud upon the rights of the other creditors, whatever may have been the equities or good faith of Sheridan prior thereto. Since he had acquired neither ownership nor pledge upon the property prior to that date, the act must be set aside as illegal and of no effect.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and the same is hereby annulled and reversed. It is further ordered and decreed that plaintiff do have and recover judgment in rem for the sum of $2,303.37, less $200 paid February 11, 1915, with 8 per cent. per annum interest from December 1, 1913, until paid, and 10 per cent. thereon as attorney's fees, annulling, and avoiding the purported transfer of January 22, 1914, as fraudulent and simulated, and recognizing and rendering executory its lien and privilege as attaching creditor upon the property seized. Defendant Sheridan to pay the costs of this appeal.

PROVOSTY, J., takes no part, not having heard the argument.