O’NIELL, J.
In May, 1912, Isaac D. Richheimer, residing and domiciled in Chicago, Ill., and carrying on business in the name of Riehheimer & Co., became indebted to Smith Bros. Company of New Orleans in the sum of $5,954.68, represented by two promissory notes. In July of that year Richheimer became indebted to Smith Bros. Company in the further sum of $24,429.71, for three lots of coffee sold by Smith Bros. Company to Riehheimer on terms of credit, viz. one lot of 400 bags and another lot of 477 bags, amounting in all to $16,305.71, and a third lot of 389 bags amounting to $8,124.00.
Riehheimer stored the coffee in warehouses in New Orleans, taking a warehouse receipt for each lot, as follows, viz.:

No 99 Public Warehouse Receipt.
Date of issue of certificate, New Orleans, July 22, 1912. Date of original receipt in warehouse, New Orleans, July 22, 1912.
Received in apparent good order and condition by the New Orleans Warehouse Co., a public warehouseman under the provisions of Act No. 156 of the Acts of 1888, from Riehheimer & Co., on storage in section B of the Bienville Warehouse, between Conti, Customhouse, Peters and Clay streets, in this city, the property designated below, subject to the following conditions: Goods deliverable only upon return of this receipt properly indorsed by Riehheimer & Co., and on the payment of all proper warehouse charges. Marble and glass stored only at owner’s risk. Not accountable for outs. *1069 leaks on liquids, or depreciation. Insurance at owner’s risk.
Marks. No. Packages. Articles.
S. S. Homer. 477 Four hundred and sev-
S. B. C. O. enty-seven bags coffee.
[Signed] New Orleans Warehouse Co., B. J. Ferguson, Agent.
For hypothecation in accordance with Act of 1888.

The three warehouse receipts, with others, representing a total of 3,152 bags of coffee, were indorsed by Richheimer & Co., and delivered in pledge to the National Bank of the Republic, in Chicago, Ill., as collateral security for a loan made by the bank to Richheimer amounting to $107,621.56.
Richheimer defaulted in the payment of his debt to Smith Bros. Company, and the latter brought suit for the $30,384.39, and had the coffee seized under writs of attachment and sequestration, praying for recognition of the vendor’s lien to secure the price for which the coffee had been sold, and for recognition of the privilege resulting from the attachment. The nonresident defendant was cited by posting copies of the petition and citation upon the courthouse door and by service upon a curator ad hoc appointed by the court to represent the absentee.
The proprietors of the three warehouses in which the coffee was stored were made garnishees, and served with interrogatories addressed to them as such. In answer to the interrogatories, each garnishee acknowledged possession of the lot of coffee stored by Richheimer, and each alleged that a negotiable warehouse receipt had been issued to Richheimer to represent the coffee, to be delivered only upon surrender of the warehouse receipt properly indorsed.
The National Bank of the Republic, holder of the three warehouse receipts, filed a petition of intervention and third opposition, praying for and obtaining citation upon the original plaintiff and defendant, and upon the sheriff and each of the three garnishees, and praying for judgment: (1) Decreeing opponent to be the pledgee of the property seized; (2) recognizing the superiority of opponent’s lien and privilege, as pledgee, on the property seized; (3) setting aside the writs of sequestration and attachment; (4) ordering that the property seized be restored to opponent’s possession; and (5) reserving opponent’s right to proceed for any damages sustained by the seizure.
On motion of the attorneys for opponent, the coffee was released from seizure and delivered to opponent on the latter’s furnishing a forthcoming bond in the sum of $50,000.
In answer to the bank’s petition of intervention and third opposition, the garnishees adopted the answers they had given to the interrogatories that had been propounded to them.
Smith Bros. Company, in answer to the bank’s petition of intervention and third opposition, denied that the bank had a valid pledge of the coffee, denied the validity of the warehouse receipts held by the bank, and alleged that the receipts were not issued in compliance with the Act No. 221 of 1908 (page 326), the Warehouse Receipts Act.
Thereafter, and within four months from *1071 the filing of the suit, Richheimer was adjudged a bankrupt by the United States District Court for the Northern District of Illinois ; and the trustee in bankruptcy appeared in this suit and excepted to the petition of the original plaintiff herein and moved to dissolve the writs of attachment and sequestration, on the grounds, mainly: (1) That plaintiff’s claim had not been presented and' proven in the bankruptcy proceeding within the time allowed; and (2) that the decree adjudging Richheimer a bankrupt, rendered within four, months after the filing of this suit, put an end to plaintiff’s right to proceed by attachment or sequestration. It appears that these pleas or exceptions have been abandoned by the trustee; and as the bank, as plaintiff in the intervention and third opposition, has no right to urge such pleas or exceptions, the interest of Richheimer or his bankrupt estate is eliminated from the suit, and the contest is between the bank and Smith Bros. Company, each claiming a superior privilege or lien on the coffee.
Smith Bros. Company was also adjudged a bankrupt, after this suit was put at issue, and the trustees in bankruptcy were made parties hereto.
Prom a judgment in favor of the bank and the trustee of the bankrupt estate of Richheimer, the trustees of the bankrupt estate of Smith Bros. Company prosecute this appeal.
Opinion.
[1,2] We adhere to the opinion expressed on the original hearing of this case that Smith Bros. Company’s answer to the bank’s petition of intervention and third opposition did put at issue the question whether the warehouse receipts held by the bank contained all of the stipulations required by the Act No. 221 of 1908 to confer upon the holder of the certificates the advantage claimed by the bank in this suit. The bank, as plaintiff in the petition of intervention and third opposition, bore the burden of proving the right of pledge claimed, superior to the lien and privilege that had been asserted by Smith Bros. Company. The bank’s right to contest the claim of Smith Bros. Company depended altogether upon whether the bank had a better claim than that of Smith Bros. Company upon the property attached and sequestered. For there is no dispute that Smith Bros. Company was entitled to the vendor’s lien and the privilege resulting from the levy of the writ of attachment. The only question is whether the bank, as holder of the warehouse receipts, had a valid pledge of the property, and had therefore a superior lien upon it, as alleged by the bank.
Counsel for Smith Bros. Company contend that there is no proof that the parties who issued the wai Jiouse receipts were ware-housemen, authorized under the law to conduct a public warehouse. No such contention was made in the pleadings; and testimony was admitted, without objection, that the parties who issued the receipts were then and had been for several years conducting public warehouses in the city of New Orleans. It is’said that there is no proof that any of these warehousemen held a license to conduct the business, or had obtained the certificate required by section 1 of the Act No. 156 of 1888 '(page 216), nor proof that they were conducting the business for profit. We assume from the evidence received without objection, especially in the absence of a denial in the pleadings, that the business -was being conducted in compliance with the law, and for profit.
The principal question presented is whether the instruments held by the bank are valid, negotiable warehouse receipts, conferring upon a purchaser for value and in good faith the advantage claimed by the bank. The bank claims to have acquired a pledge of the coffee, and to have the privilege *1073 conferred by section 49 of the Warehouse Receipts Act, viz.:
“When a negotiable receipt has been issued for goods, no seller’s lien or right of stoppage in transitu shall defeat the rights of any purchaser for value in good faith to whom such receipt has been negotiated, whether such negotiation be prior or subsequent to the notification to the warehouseman who issued such receipt of the seller’s claim to a lien or right of stoppage in transitu. Nor shall the warehouseman be obliged to deliver or justified in delivering the goods to an unpaid seller unless the receipt is first surrendered for cancellation.”
[3] As there can be no valid pledge without actual delivery of the property to the pledgee or his authorized agent, under the general laws of pledge in this state, the right asserted by the bank depends upon the particular law, the Warehouse Beceipts Act.
Counsel for Smith Bros. Company contend that the instruments in question, although representing valid contracts between the warehousemen and the depositor of the goods, do not contain the stipulations required by the Warehouse Beceipts Act to invest them with the peculiar attributes and advantages conferred by the act, and that they are therefore not valid, negotiable warehouse receipts.
Section 2 of the statute is in the following words, viz.:
“Form of Receipts — Essential Terms. — Warehouse Beceipts Need Not be in Any Particular Eorm, But Every Such Beceipt must Embody Within Its Written or Printed Terms—
“(a) The location of the warehouse where the goods are stored;
“(b) The date of issue of the receipt;
“(c) The consecutive number of the receipt;
“(d) A statement whether the goods received will be delivered to the bearer, to a specified person, or to a specified person or his order;
“(e) The rate of storage charges;
“(f) A description of the goods or of the packages containing them;
“(g) The signature of the warehouseman, which may be made by his authorized agent;
“ (h) If the receipt is issued for goods of which the warehouseman is owner, either solely or jointly or in common with others, the fact of such ownership; and
“(i) A statement of the. amount of advances made and of liabilities incurred for which the warehouseman claims a lien. If the precise amount of such advances made or of such liabilities incurred is, at the time of the issue of the receipt, unknown to the warehouseman or to his agent who issues it, a statement of the fact that advances have been made or liabilities incurred and the purpose thereof is sufficient.
“A warehouseman shall be liable to any person injured thereby for all damage caused by the omission from a negotiable receipt of any of the terms herein required.”
[4] It is contended by counsel for Smith Bros. Company that each one of the receipts in question lacks the following “essential terms,” viz.: (e) The rate of storage charges; and (i) a statement of the amount of advances made and of liabilities incurred for which the warehouseman claims a lien, or (if the amount was unknown to the warehouseman or his agent at the time of issue of the receipt) a statement of the fact that advances were made or liabilities incurred and the purpose thereof.
It is contended that the receipt No. 1338, issued by the Crescent Warehouse, Incorporated, also lacks the “essential term” (a), the location of the warehouse where the goods were stored; that the receipt No. 99, issued by the New Orleans Warehouse Company, and receipt No. 3528, issued by S. Jackson, proprietor of the Standard Warehouse, lack also the “essential term” (d), a statement whether the goods will be delivered to the bearer, to a specified person, or to a specified person or his order; and that the number “99,” on the receipt issued by the New Orleans Warehouse Company, is not in fact the consecutive number of that receipt, because of 1,160 warehouse receipts that were issued by that company in that year, 400 were issued ahead of the receipt numbered 99.
The complaint that receipt No. 1538, issued by the Crescent Warehouse, Incorporat *1075 ed, does not show the location of the warehouse is based upon the contentions: First, that the location should be stated in the body of the receipt, not merely in the margin ; and, second, that the location given in the margin is the location of the corporation, not of the warehouse, and might therefore refer to the office of the corporation. We find no merit in the argument, because it appears in the body of the receipt that the name of the warehouse itself, as well as of the corporation, is “the Crescent Warehouse, Incorporated.” It is recited in the body of the receipt that the goods were received “on storage in the Crescent Warehouse, Incorporated, Sixth Division.” And the location given in the margin of the receipt, of the “Crescent Warehouse, Incorporated,” is on “Tchoupitoulas, St. Joseph, and Commerce Streets,” which no one could doubt, reading the name of the city in the date line of the receipt, referred to streets in the city of New Orleans.
We find no merit in the contention that two of the receipts, No. 99 and No. 3528, do not contain the “essential term” (d), a statement whether the goods received will be delivered to the bearer, to a specified person, or to a specified person or his order. Receipt No. 99 says, “Goods deliverable only upon return of this receipt properly indorsed by Richheimer & Co.”; and receipt No. 3528 says that the goods are “deliverable only on return of this receipt properly indorsed.” The expression “properly indorsed” of course means indorsed by Richheimer & Co., the depositor named in the receipt. Section 58 of the Warehouse Receipts Act, giving the definitions of the terms used in the statute, says, “ ‘Order’ means an order by indorsement on the receipt.” The converse of the statement being also true, the expression “deliverable only upon return of this receipt properly indorsed by Richheimer & Co.” means deliverable to the order of Richheimer & Co. Section 5 of the Warehouse Receipts Act declares:
“A receipt in which it is stated that the goods received will be delivered to the bearer, or to the order of any person named in such receipt, is a negotiable receipt.”
Considering also the expression in section 2 that “warehouse receipts need not be in any particular form,” our opinion is that these receipts, in which it is stated, substantially, that the goods received will be delivered to the order of a person named therein, are negotiable receipts, as far as the requirements of paragraph (d) of section 2 and the requirements of section 5 go.
[5] We adhere to our original opinion that the validity of the receipt No. 99, issued by the New Orleans Warehouse Company, is not affected by the fact that it was not the ninety-ninth receipt issued by that company, or even the ninety-ninth receipt issued in the calendar year in which that one was issued. Section 3 of Act No. 156 of 1888 (page 217) required that all warehouse receipts should be consecutively numbered, in the order of their issue, and that no two receipts bearing the same number should be issued from the same warehouse during the same year. But that is not a requirement of the statute of 1908. The manifest purpose of requiring that every warehouse receipt shall bear its consecutive number is to identify each receipt with the goods for which it was issued. There is no express requirement as to when the consecutive; numbers shall begin. Nor are we compelled to infer from the fact that, of the 1,160 receipts issued by the New Orleans Warehouse Company in 1912, 400 were issued ahead of the one numbered 99, there must have been two numbered 99 in that year; for it may be that the consecutive numbers of that year began with a number higher than 99. It is sufficient that the receipt in question does bear the “essential *1077 term” (c), the consecutive number of the receipt.
[6] The only remaining question is whether the instruments in question are valid, negotiable warehouse receipts, having the attributes conferred by the Act No. 221 of 1908, notwithstanding they do not embody within their written or printed terms (e), the rate of storage charges, nor (i), a statement of the amount of advances made and of liabilities incurred for which the warehouseman claims a lien, or, if the precise amount was unknown to the warehouseman at the time of issue of the receipts, a statement of the fact that advances .were made or liabilities incurred and the purpose thereof.
Counsel for the bank argue that the only consequence of an omission of any of the so-called “essential terms” which the statute declares “must be embodied within its written or printed terms” is the penalty prescribed in the last paragraph of section 2; i. e., that the warehouseman shall be liable to any person thereby injured for all damage caused by the omission from a negotiable receipt of any of the terms required by the preceding paragraphs of section 2. We do not subscribe to that opinion unqualifiedly. The statement that the warehouseman shall be liable in damages for an omission of any of the “essential terms” from “a negotiable receipt” cannot mean that an instrument may be a valid negotiable receipt, notwithstanding the omission of any of the terms that are declared to be essential to its validity. Our opinion is that the expression in that paragraph, “negotiable receipt,” means a receipt that would be a valid, negotiable receipt except for the omission by the warehousman of one or some of the essential terms stated in the preceding paragraphs. In other words, the expression “negotiable receipt” has reference to the definition given in section 5; i. e., “A receipt in which it is stated that the goods received will be delivered to the bearer, or to the order of any person named in such receipt, is a negotiable receipt.” But the mere statement, in any receipt, that the goods received will be delivered to the bearer, or to the order of any person named in such receipt, would not make the instrument a valid warehouse receipt, if any essential term required by section 2 of the statute were omitted. A warehouse receipt might be valid and not be negotiable, but it could not be negotiable and not be valid. Section 2 of the statute deals with the subject of validity of warehouse receipts, negotiable and nonnegotiable. Sections 4 and 5 draw the distinction between negotiable and nonnegotiable valid warehouse receipts. And part III of the statute, dealing with the subject of negotiation and transfer of valid warehouse receipts, like sections 4 and 5, declares the law to be substantially the same with regard to such instruments as it is with regard to other commercial paper, negotiable and nonnegotiable.
Disregarding all others of the so-called “essential terms” enumerated in section 2 of the statute, we must confine our decision to the question whether the validity of these instruments, as negotiable warehouse receipts, is affected by the omission of the terms (e), the rate of storage charges, and (i), a statement of the amount of advances made and of liabilities incurred for which the warehouse-men might claim a lien, or, if the precise amount of the advances or liabilities was unknown, a statement of the fact that advances were made or liabilities incurred, and the purpose thereof.
It is quite certain that the law does not, and could not with reason, require that a warehouseman should insert in a warehouse receipt a rate of storage charges, a statement of advances made and of liabilities incurred for which the warehouseman might claim a lien, or a statement of the fact that advances had been made or liabilities incurred *1079 and the purpose thereof, if there were no storage charges, nor advances made nor liabilities incurred. The only purpose imaginable for embodying in a warehouse receipt the rate of storage charges, the amount of advances made or liabilities incurred by the warehouseman, or a statement that advances were made or liabilities incurred, is to preserve the lien and secure the payment to the warehouseman of such charges, advances, or liabilities. In that connection, section 27 of the statute, enumerating the claims that are secured by the warehouseman’s lien, declares that, subject to the provisions of section 30, a warehouseman shall have a lien on goods deposited, or on the proceeds thereof in his hands, for all lawful charges for storage and preservation of the goods; also for all lawful claims for money advanced, interest, insurance, transportation, labor, weighing, coopering and other charges and expenses in relation to such goods; also for all reasonable charges and expenses for notices and advertisements of sale and for sale of the goods, where default has been made in satisfying the warehouseman’s lien. And section 30 makes it plain that the loss of the warehouseman’s lien is the only consequence of an omission from a negotiable warehouse receipt of the charges for which a warehouseman’s lien might be claimed, viz.:
“Section 30. — Negotiable Receipt must State Charges for Which Lien is Claimed. — If a negotiable receipt is issued for goods, the warehouseman shall have no lien thereon, except for charges for storage of those goods subsequent to the date of the receipt, unless the receipt expressly enumerates other charges for which a lien is claimed. In such case there shall be a lien for the charges enumerated so far as they are within the terms of section 27, although the amount of the charges so enumerated is not stated in the receipt.”
It must be observed, too, that the requirement of paragraph (i) of section 2, when the warehouseman does not know the precise amount of advances made or liabilities incurred for which he would have a lien, is that he shall state that advances have been made or that liabilities have been incurred, and the purpose thereof. In other words, if advances have been made he must state that fact, and if liabilities have been incurred he must state that fact; but he need not state as a fact that which is untrue. It would be unreasonable to say that a valid negotiable warehouse receipt could not be issued for goods on which the storage charges were paid in advance, against which there was no rate of storage charges running, or on which no advances were made nor liabilities incurred, for which the warehouseman might have a lien. It would be the same as to say that a warehouseman could not issue a valid negotiable warehouse receipt without embodying therein a rate of storage charges and a statement that advances were made or that liabilities were incurred, regardless of the truth of such statement. The validity of a negotiable warehouse receipt would not be destroyed by a false statement therein made by the warehouseman, as to the rate of storage charges, or that advances had been made or that liabilities had been incurred, or as to the purpose for which advances had been made or liabilities incurred. Nor does the statute require that a valid warehouse receipt shall contain the negative statement that there are no storage charges running, if there are none, or that no advances have been made, if none have been made, or that no liabilities have been incurred, if none have been incurred.
Although section 2 of the statute employs rather mandatory language in prescribing the terms which must be embodied in a warehouse receipt, the act does not declare that an omission of any of the prescribed terms shall invalidate such receipt. Therefore we are not departing from the letter of the statute, which expressly demands that *1081 it shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of the states that have enacted it, in holding that the warehouse receipts in question are not rendered invalid by the omission of the rate of storage charges and a statement that advances were made or liabilities incurred by the warehousemen who issued them.
The decree heretofore rendered herein, affirming the judgment appealed from, is reinstated and made final.
MONROE, C. J., concurs in the decree.