LAND, J.
 

 On December 17,1928, the Tangipahoa Parish News, Inc., a corporation domiciled in the town of Amite in the parish of Tangipahoa, mortgaged its real estate and buildings, and its newspaper plant, equipment, and good will, to the Security Bank of the Town' of Amite, as security for a loan of $2,500.
 

 This mortgage was filed for record in said parish December 28, 1928, and was recorded January 3, 1929.
 

 On June 24, 1929, the Security Bank obtained executory process in foreclosure of its mortgage, and seized and advertised for sale, on September 14, 1929, all of the property hypothecated to it.
 

 On May 31, 1929, in the suit of Mrs. Vera E. Bedwell v. Tangipahoa Parish News, Inc., No. 1774 in the district court for the parish of Tangipahoa, plaintiff obtained judgment against defendant in the sum of $1,800, with legal interest thereon from January 1, 1928, until paid.
 

 In execution of this judgment, the sheriff of Tangipahoa parish seized, advertised, and offered for sale on August 17, 1929, a part of the equipment belonging to the Tahgipahoa Parish News, Inc., including an Intertype machine. All of this property, at the time, was under seizure by the Security Bank under executory process, and was situated and contained in the buildings located on the real
 
 *719
 
 estate also mortgaged to the bank by the Tangipahoa.Parish News, Inc.
 

 Claiming to be the last and highest bidder of this property at the sale made by the sheriff on August 17, 1929, and that the sheriff had accepted his bid, the intervener, Thomas A. Warner, alleges that the sheriff refused to adjudicate to him the property purchased at the sale. Thereupon, the intervener caused a rule to be issued against the sheriff, citing him to show cause'why he should not be ordered to adjudicate the property in question to the intervener.
 

 After due hearing had, the trial judge ordered the sheriff to adjudicate the property to intervener. From this judgment the sheriff did not appeal, but the Security Bank, a party in interest, applied for and secured an order for a suspensive appeal to this court from this judgment, and filed its suspensive appeal bond timely.
 

 Intervener has also attacked the mortgage of the Security Bank, so- far as the property bought by him is concerned, as illegal, null, and void on several grounds, and applied for and obtained a preliminary injunction restraining the sale of the property on September 14,1929, under the executory process provoked, by the Security Bank.
 

 ■ Judgment was rendered on February 25, 1930, declaring one Cranston Cylinder press No: 2942, together with the attached engine,. and one large Job press No. 2S144 with shafting and pulleys attached, immovables by destination and subject to the mortgage of the Security Bank; but decreeing all of the other property purchased by the intervener to be movables, and to belong to him free of the mortgage of the Security Bank, and prohibiting and enjoining the bank and the sheriff from selling, or attempting to seize or sell, any of this property, situated in the buildings owned by the Tangipahoa Parish News, Inc.
 

 From this judgment the Security Bank has appealed suspensively.
 

 1. The mortgage which the Security Bank seeks to foreclose in this case was executed under the provisions of Act 254 of 1908, which reads as follows:
 

 “Section 1. Be it enacted by the General Assembly of the State of Louisiana, That any person, firm or corporation that shall or may be engaged in the publication and circulation of a newspaper in this State shall have' the right, power and authority to issue bonds, notes or other evidences of debt and to secure same by the mortgage and pledge
 
 of the plant and equipment of said newspaper and the name and good will of its business.
 
 And said mortgage and pledge shall have the same legal effects as have other mortgages and pledges under existing laws.
 

 “Section 2. Be it further enacted, etc., That said act of mortgage and pledge shall be made in the same form provided by existing laws for other, acts of mortgage and pledge and shall be recorded in the mortgage office of the parish in which newspaper shall be published. The foreclosure and sale of the property so mortgaged and pledged shall be made and had as is now or may hereafter be provided by law for the foreclosure and sale of real estate'mortgaged.”
 

 The property described in the mortgage of the Security Bank is as follows:
 

 “The west fifty-four feet of Lots Two. and Three of Square Twenty-eight of the town of Amite City, Parish of Tangipahoa, State of Louisiana, forming a lot fronting fifty-four feet on Oak Street by one hundred feet in depth on Bay Street, with all buildings and improvements thereon, including the entire
 
 *721
 
 plant and equipment presently known as the “Tangipahoa Parish News,’ situated thereon, with all machinery, equipment, supplies, machines, engines, motors, shafting, pulleys, belting, type, type metal, presses, Intertype, furniture, fixtures, and everything going to make up the newspaper, printing and publishing establishment now owned by Tangipahoa Parish News, Inc., and operated under the name and style of the ‘Tangipahoa Parish News,’ which equipment comprises the entire newspaper and printing plant, without exception, also including the newspaper rights, trade name, good will, patronage, subscription lists, and all other property, rights and credits of the ‘Tangipahoa Parish News.’ ”
 

 The act of mortgage is in the same form provided by existing laws for other acts of mortgage importing confession of judgment. It has been recorded in Tangipahoa parish in which the Tangipahoa Parish News is published; and the foreclosure and sale of the property mortgaged has been in the manner now provided by law, as expressly required by section 2 of Act 254 of 1908.
 

 The intervener has attacked the mortgage of the Security Bank in his petition for an injunction as illegal, null, and void for the following reasons:
 

 “a. That the description of the movable effects contained in said act of mortgage is too vague and indefinite to identify said property or any other movable property or effects.
 

 “b. That the said act of mortgage does not give the location of said movables attempted to be mortgaged.
 

 “c. That said mortgage purports to be a mortgage covering real property and has never been recorded in the Chattel Mortgage Records of Tangipahoa Parish.
 

 “d. That said property has never been declared immovable by destination.”
 

 The above objections are predicated upon the contention of the intervener that Act 254 of 1908 must be read together with Act 198 of 1918, the Chattel Mortgage Act.
 

 We do not concur in this view of the matter.
 

 Act 254 of 1908 is independent legislation, passed ten years before the adoption of the Chattel Mortgage Act, and it is therefore evident that the Legislature did not intend that the two acts should either operate together or be construed with relevance to each other.
 

 Moreover, Act 254 of 1908 deals solely with the hypothecation of only one species of property,
 
 the plant in its entirety and as a going concern
 
 of any person, firm, or corporation that may be engaged in the publication and circulation of a newspaper in this state.
 

 As defined in Webster’s New International Dictionary, “In the commercial sense, a
 
 plant
 
 may include real estate and all else that represents capital invested in the means of carrying on a business, exclusive of the raw material or the manufactured product.”
 

 In our opinion, the word “plant,” as used in Act 254 of 1908, not only includes real estate, but also the machinery, apparatus, fixtures, etc., employed in carrying on the newspaper business.
 

 As the
 
 plant in its entirety
 
 is to be hypothecated under the act, it is immaterial whether the property to be included in the act of mortgage is real estate, or immovable by destination, or movable or otherwise. Under the express terms of the act, even
 
 “the name and the good will
 
 of the business” may be mortgaged by the owner of the newspaper.
 

 It follows, therefore, that .it is not necessary to include the real estate in an act of mortgage, and the movable property in an act of pledge, as contended by intervener, since one species of property enters into
 
 the
 
 
 *723
 

 entirety of the plant
 
 as much as another. Besides, the terms “mortgage and pledge,” as used in the act, were intended to mean nothing more than “hypothecate.”
 

 If it still be insisted that the term “pledge,” as used in the act, be defined and enforced technically and strictly, then it must follow that whatever movables in the plant are pledged must be delivered to the pledgee, or creditor, otherwise the pledge would not be valid. C. C. art. 3152; Mechanics’ Bank v. Van Zant, 144 La. 685, 81 So. 251; Smith Bros. Co. v. Richheimer & Co., 145 La. 1066, 83 So. 255.
 

 If this were done, it is manifest that a newspaper plant could not be operated at all, since only two pieces of machinery in defendant’s entire plant have been found by the lower court to be immovable by destination in the present case, and all the rest of the equipment movable.
 

 As the Chattel Mortgage Act of 1918 has no application to the case, it was not necessary to record the mortgage of the Security Bank in the Chattel Mortgage Book,' nor was it necessary to describe the property mortgaged with more particularity than has been done in the act of mortgage held by the Security Bank. Presses, machines, etc., stored in a building used as a newspaper office have a fixed habitation, and are identified largely by the location in which they are placed.
 

 On the other hand, automobiles, cattle, horses, etc., constitute an entirely different kind of chattel and, because of their mobility and the difficulty of identification, a full description of such movables is required under the Chattel Mortgage Act, Act 198 of 1918.
 

 Therefore, our conclusion is that the mortgage of the Security Bank is legal and valid and affects the entire plant, equipment, machinery, etc., of the Tangipahoa Parish News, Inc.
 

 2. The record discloses the fact that the sheriff refused to adjudicate to the intervener the property bid in by him at the execution sale on August 17, 1929, for the reason that the price offered by the intervener was not sufficient to discharge the privileges and mortgages existing on the property, and which had a preference' over the judgment creditor. This is not disputed.
 

 The following liens and mortgages existed on the plant and equipment of the Tangipahoa Parish News, Inc.: A paving lien in favor of the town of Amite for $348.34; a mortgage in favor of the Security Homestead Association for $3,000; and the mortgage in favor of the plaintiff, the Security Bank, in the sum of $2,500 — all of which were superior to the claim of the judgment creditor, Mrs. Vera E. Bedwell. Tr. p. 20.
 

 It is well settled that there can be no valid adjudication where thé bid is insufficient to discharge the privileges and mortgages on the property, which outrank the claim of the judgment creditor. Code of Practice, arts. 683, 684; Dunning v. Coleman & Co., 27 La. Ann. 48; Hills v. Jacobs, 7 Rob. 406; Bacas v. Hernandez, 31 La. Ann. 87.
 

 Since there was no valid adjudication, the intervener did not acquire the ownership of any of the property upon which he bid, and there was, therefore, no legal basis either for the judgment ordering the sheriff to adjudicate the property to intervener, as the last and highest bidder, or for the issuance of the preliminary injunction in this case, prohibiting the Security Bank and the sheriff from selling the property on September 14, 1929, under the executory process obtained by the bank.
 

 The contention of intervener that the Security Bank waived its mortgage by per
 
 *725
 
 mitting the property subject to it to be sold confusedly in mass with other movables, without protecting its rights by causing such property to be separately sold, is without merit, since the mortgage of plaintiff bank covered the plant of the Tangipahoa Parish News, Inc.,
 
 in its entirety
 
 and, therefore, affected all the movables belonging to the plant, whether or not they were immovable by destination.
 

 Nor was it necessary for the Security Bank to intervene in the execution proceedings under writ of fieri facias, and request a separate appraisement and sale of the property upon which it had a mortgage, as plaintiff bank could safely rely upon the mortgage certificate showing the existence, upon the property hypothecated to it, of liens and mortgages superior in rank to the claim of the judgment creditor, and as the mortgage of the bank itself also outranked the claim of the seizing creditor. Under these conditions, there could be no adjudication of the property to intervener, without the discharge by him of all of the prior liens and mortgages on the property hypothecated to the bank.
 

 Therefore, there was no valid adjudication to intervener of the Intertype machine or of any other movable upon which he may have bid.
 

 As the Intertype Corporation was not a party to the proceedings in the court below, and as we will have to set aside the judgments appealed from in toto, the question as to whether or not the Intertype Corporation has a vendor’s lien and chattel mortgage, or a first lien upon the' mortgaged .property, is one that will have to be litigated, when this case is remanded.
 

 It is therefore ordered that the judgment appealed from, of date August 23, 1929, making absolute the rule issued by intervener upon the sheriff of Tangipahoa parish, and ordering him to adjudicate to intervener the property sold to him on August 17, 1929, be annulled and set aside.
 

 It is further ordered that the judgment appealed from, of date February 25, 1930, declaring all of the movable property constituting the plant of the Tangipahoa Parish News, Inc., not to be subject to the mortgage held by plaintiff, the Security Bank, except one Cranston Cylinder press No. 2942, together with attached engine, and a large Job press No. 2S144, together with shafting and pulleys attached, and prohibiting and enjoining the Security Bank and the sheriff of Tangipahoa parish from selling or attempting to seize or sell the movable property in question, be and is hereby annulled and reversed.
 

 It is further ordered that the writ of preliminary injunction herein issued be and is hereby recalled, dissolved, and dismissed.
 

 It is now ordered that this case be remanded to the lower court for further proceedings according to law, and that intervener pay the costs of this appeal, all other costs to await final judgment in the court below.