[No. 15524.  Department One.  January 13, 1920.]

# CITIZENS BANK, *Respondent*, v. A. B. WILLING, *as Willing & Company, Appellant*.[1]

BILLS AND NOTES (6) — DRAFTS — ACCEPTANCE — STATUTES — CONDITIONAL ACCEPTANCE.  Under Rem. Code, §.3524, providing that an acceptance on a paper other than the bill itself does not bind the acceptor except in favor of the person to whom it is shown and who receives it for value on the faith thereof, a draft accompanying a bill of lading for a car load of shooks was not conditionally accepted or binding on the drawee, where the bank consigning the car received the draft several days prior to presentation and on presentation the drawee refused to accept it but requested that the bill of lading and shipment be forwarded to the purchaser for inspection until which no payment would be made; since the bank did not receive the draft for value on the faith of the acceptance, although it may have relied thereon in forwarding the bill.

WAREHOUSEMEN (3)—RECEIPTS—NEGOTIABILITY.  A company having no warehouse of its own and doing no business for the public, organized as a device by which a bank could furnish negotiable warehouse receipts as collateral security for loans to a manufacturing company, is not a '"warehouseman" authorized to issue negotiable warehouse receipts, within Rem. Code, § 3369-58, defining a warehouseman as "a person lawfully engaged in the business of storing goods for profit"; hence the bank did not acquire title by virtue of its warehouse receipt denominated on its face as negotiable; since the carrier was justified, under Rem. Code, §3385-12, in delivering the goods to the consignee named in a nonnegotiable bill of lading.

SALES (150) — ACTION FOR BREACH — CONDITIONS PRECEDENT — ABILITY AND READINESS TO PERFORM.  A party claiming damages for breach of contract to deliver box shooks, need not allege or prove ability and willingness to perform on his part, where before the time for performance the other party gave notice that it would not perform.

Appeal from a judgment of the superior court for King county, Smith, J., entered June 20, 1919, upon findings in favor of the plaintiff, in an action on a bill of exchange, tried to the court.  Reversed.

[1] Reported in 186 Pac. 1072.

*W. H. Bolen,* for appellant.

*George A. Joiner* and *J. L. Corrigan,* for respondent.

MAIN, J.—The purpose of this action was to recover upon a bill of exchange claimed to have been conditionally accepted by the defendant. The case was tried to the court without a jury, and resulted in findings of fact, conclusions of law and judgment sustaining the plaintiff's right to recovery. From this judgment, the defendant appeals.

The facts are substantially as follows: The Red Cedar Company operated a mill at Anacortes in which was manufactured box shooks. The appellant, with offices in the city of Seattle, was engaged in the brokerage business, and in such business bought and sold box shooks. On October 1, 1918, the appellant contracted with the Red Cedar Company for the purchase of 500,000 salmon box shooks, which were to be manufactured and delivered subsequent to the 1st of January following. On October 7, 1918, the appellant contracted with the Red Cedar Company for not less than 75,000 nor more than 100,000 milk box shooks. On January 1, 1919, and before any of the salmon box shooks had been manufactured or delivered, the Red Cedar Company notified the appellant that it would be unable to "furnish any part of the salmon shooks." The milk box shooks which were covered by the contract of October 7, or part of them, were sold to the dairy products company doing business at Snohomish. On January 11, in pursuance to a request from the appellant, the Red Cedar Company consigned for shipment a carload of box shooks over the Great Northern Railway Company to the Snohomish Dairy Products Company. The shooks were in no instance shipped direct to the appellant. The method of doing business was that, after the appellant would make a sale of the

shooks, he would notify the Red Cedar Company to ship direct to his customer. When the shooks were delivered to the railroad company at Anacortes, a non-negotiable bill of lading was taken in which the dairy products company was named as consignee and the Citizens Bank of Anacortes, the respondent, as consignor. The bank had loaned the Red Cedar Company a considerable sum of money, and in order to secure the same, the officers and members of the Red Cedar Company had organized a warehouse company under the name of the Fidalgo Warehouse Company. When the shooks were manufactured, they were placed in a separate room or shed on the premises of the Red Cedar Company and a negotiable warehouse receipt was issued therefor in the name of the Fidalgo Warehouse Company. This receipt was. deposited with the bank as collateral. This accounts for the fact that the bank was named in the bill of lading as the consignor. After the bill of lading was issued, it was taken to the bank and a sight draft was drawn upon the appellant by the Red Cedar Company. The draft and the bill of lading were turned over to the bank and were forwarded to the Dexter Horton Bank at Seattle with instructions to present the draft to the appellant for acceptance, which was done on January 13. The appellant declined to accept the draft, and wrote the Red Cedar Company this letter:

"We were presented with a draft for $1,398 with Snohomish Dairy Products Co. bill of lading attached covering car milk box shooks. We instructed you on the 9th inst. to ship direct to Snohomish Dairy Products Co. so kindly notify the Dexter Horton Bank to forward bill of lading to Snohomish Dairy Products Co. in order that they may unload and inspect the shooks according to our instructions. We are not buying any 'cat in a bag,' from the Red Cedar Company

and will not pay any draft until the milk boxes are all checked out and inspected by our customer."

After this letter was received by the Red Cedar Company, it was shown to the president of the Citizens Bank of Anacortes, who thereupon notified the Dexter Horton Bank to forward the bill of lading to the Snohomish Dairy Products Company and hold the draft. The Dexter Horton Bank did as instructed. In due time the dairy products company received, inspected and accepted the carload of shooks, and paid the appellant for the same. After the payment had been received, the appellant wrote the Red Cedar Company a letter stating that he had received payment from the Snohomish Dairy Products Company and would hold the same against the losses that he had sustained by reason of the fact that the Red Cedar Company had breached its contract to furnish the 500,000 salmon box shooks. A short time thereafter, the Citizens Bank of Anacortes, the respondent, brought the present action upon the draft, and also claiming to have been the owner of the shooks at the time they were delivered to the Great Northern Railway Company for shipment.

To the complaint, the appellant pleaded an affirmative defense, alleging that the damage he had sustained by reason of the breach of the salmon contract more than consumed the money which he had received from the Snohomish Dairy Products Company, and claiming the right of offset.

The first question is whether the respondent can prevail upon the theory that the draft was conditionally accepted by the appellant. This acceptance, if it was such, was written not upon the draft itself, but upon a separate paper, namely, a letter, a copy of which is above set out. The statute (Rem. Code, § 3524) provides that:

"Where an acceptance is written on a paper other than the bill itself, it does not bind the acceptor except in favor of the person to whom it is shown and who, on the faith thereof, receives the bill for value."

The letter was shown to the respondent on the 14th day of January. Prior to this and on the 11th day of January, it had received the draft from the Red Cedar Company. It did not, therefore, "receive the bill for value" on the faith of the letter. It is true that, in reliance upon the letter, the bank directed that the bill of lading be sent to the dairy products company, the consignee, but this does not bring it within the statute. Under the bill of lading act (Id., § 3385-12) the carrier would have been justified in delivering the shooks to the consignee named in the nonnegotiable bill without its presentation. Much is said in respondent's brief with reference to the letter above set out being a trick by which it fraudulently was enabled to receive the payment from the dairy products company without first accepting the draft. While the letter is not frank and candid and is not to be commended, it does not deprive the appellant of his legal rights. The respondent cannot prevail upon the draft because, construing the letter as a conditional acceptance, it did not receive the bill for value in reliance thereon. As already stated, the bill had been received several days prior to the presentation of the letter. The rule, as stated in 3 R. C. L., page 1305, is:

"The result of the authorities may be stated to be, that a letter written within a reasonable time before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, is, if shown to the person who afterwards takes the bill on the credit of the letter, a virtual acceptance binding the person who makes the promise."

This is substantially the rule of the statute.

The respondent not being able to prevail upon the draft, the next question is whether it can recover as owner. If it is in the position of owner, it must be by virtue of the warehouse receipt issued by the Fidalgo Warehouse Company, which is denominated on its face as negotiable. This presents the question whether the Fidalgo Warehouse Company was a "warehouseman" within the contemplation of the uniform warehouse receipts act (Rem. Code, §§ 3369-1 to 3369-61). Section 1 of this act provides that "warehouse receipts may be issued by any warehouseman, and must be issued in manner and form as provided by this act." In § 3369-58, "warehouseman" is defined to mean "a person lawfully engaged in the business of storing goods for profit." In this case the Fidalgo Warehouse Company had no separate building of its own; it did not store goods for the public generally or at all; it only stored the product of the Red Cedar Company in a room or shed upon the premises of that company. It was simply a device by which the bank was furnished negotiable warehouse receipts as collateral security for the loans which it had made to the Red Cedar Company. The evidence fails to show that the warehouse company was storing goods for profit, and therefore it would not come within the statutory definition. A quotation from *National Bank of Commerce of Kansas v. Flanagan Mills & Elevator Co.*, 268 Mo. 547, 575, 188 S. W. 117, will state the general rule, supported by the authorities:

"When the whole transaction is placed in evidence, it appears that Flanagan Mills & Elevator Company was a milling concern, and only handling and storing grain and mill products to be used in the ordinary course of its business. It was not a warehouseman either at common law or under the statute, because

not engaged in the business of receiving and storing goods, wares, and merchandise for others. In such case the mere form of the receipt is not sufficient to make it a warehouse receipt. Proof must be made that the party issuing the receipt was in fact a warehouseman. No such proof appears in this case, but in fact the proof is to the contrary.''

Since the bank acquired no title under the warehouse receipt negotiable in form, for the reason stated, it follows that it cannot recover as owner. It had no contract with the appellant relative to the shooks, and was not known by the appellant in the transaction except through the presentation of the draft.

One other question will be considered. Treating the delivery of the draft by the Red Cedar Company to the bank as an assignment of the claim, the question upon the offset pleaded by the appellant arises. The respondent claims that this defense must fail because it is not alleged and proven that appellant was ready and able to perform the salmon shook contract for the breach of which damages are claimed as an offset. The damages flowing from the breach of this contract, as shown by the evidence, were more than sufficient to consume the amount of the draft. Before the time named in the contract for the delivery of the salmon shooks, the Red Cedar Company breached the contract and notified the appellant that it would not perform it. In such a case, the party relying upon the breach for the recovery of damages is not required to allege and prove ability and readiness to perform. 13 C. J. 764; *Chicago House Wrecking Co. v. James H. Rice Co.,* 67 Ill. App. 686; *Wolf v. Willits,* 35 Ill. 88.

The respondent being unable to recover either upon the theory of conditional acceptance of the draft or upon that of owner, and the appellant having successfully maintained his defense of offset, no recovery can be had in this case.

The judgment will be reversed, and the cause remanded with direction to dismiss the action.

Reversed.

HOLCOMB, C. J., PARKER, MITCHELL, and MACKINTOSH, JJ., concur.