T. N. HARTUNG, Appellant, v. C. N. MANNING, George M. Hogue, George Dickinson, and Elmer T. Judd, as Members of the Game and Fish Board of the State of North Dakota, and R. A. Nestos, S. A. Olsness, John Steen, Sveinbjorn Johnson and Gilbert A. Semmingson, as Members of the State Auditing Board of the State of North Dakota, Respondents.

(196 N. W. 554.)

**Board, game — employees of game and fish board removable at pleasure.**

1. Under the provisions of chapter 161, Laws of 1915, the state game and fish board may remove its employees and appointees at pleasure.

**Board, game — special meetings of game and fish board may be called at any time and place.**

2. Under the statute special meetings of the game and fish board may be called by the president for any time and for any place in the state.

**Board, game — resolutions of game and fish board held to work removal of game wardens.**

3. The game and fish board passed a resolution that all game wardens be "laid off" together with another directing their secretary to notify all wardens "of the expiration of their terms of office." *Held*, to work an absolute removal from office, not a temporary suspension.

**Appeal and error — finding of trial court presumed to be correct.**

4. Upon appeal in special proceedings and in jury cases tried to the court without a jury, the supreme court will not try the case de novo, but the findings of the trial court are presumed to be correct.

---

Note.— (4) Findings of trial court not disturbed if supported by evidence, see 2 R. C. L. 203; 1 R. C. L. Supp. 441; 4 R. C. L. Supp. 91; 5 R. C. L. Supp. 80.

**Removal — finding deputy game warden had notice of removal sustained.**

5. Evidence examined and it is *held*, that the trial court's finding that petitioner had notice of his removal from office, is not opposed to the preponderance of the evidence.

Opinion filed December 19, 1923.

Appeal and Error, 4 C. J. §§ 2646 p. 726 n. 16; 2722 p. 775 n. 26; 2727 p. 777 n. 60. Evidence, 22 C. J. §§ 36 p. 96 n. 92; 42 p. 100 n. 29. Game, 27 C. J. § 19 pp. 954 n. 74–75; 955 n. 78. Officers, 29 Cyc. p. 1435 n. 42 New.

Appeal from the District Court of Burleigh County, *Coffey,* J.

Mandamus proceeding. Petitioner appeals from the judgment dismissing his petition and order denying a new trial.

Affirmed.

*William Langer, S. L. Nuchols,* and *Charles L. Crum,* for appellant.

The proceedings of the board for the removal of plaintiff from office, if legal, did not take effect until plaintiff received notice, express or implied, thereof. 29 Cyc. 1405; State v. Peterson, 50 Minn. 239, 52 N. W. 655; State ex rel. Moore v. Archibald, 5 N. D. 359.

Conceding that an office is not property, still a claim for accrued salary and expenses of an officer is a property right within the constitutional provisions against depriving one of property without due process of law. 12 C. J. 1214; Sherlock v. United States, 43 Ct. Cl. 161.

But to raise such presumption, even in the absence of any proof to the contrary, it must be shown, (1) that the letter was properly addressed to the addressee at his usual post office address, (2) that a sufficient postage was affixed, (3) that it was deposited in a post office or some authorized depository for mail. Kvale v. Keane (N. D.) 168 N. W. 74.

The power of temporary suspension is included in the power of removal for cause upon a hearing, during the interim between the suspension and the hearing. 29 Cyc. 1405; Gregory v. New York, 113 N. Y. 416, 21 N. E. 119; Metsker v. Neally, 41 Kan. 122, 21 Pac. 206.

*George F. Shafer,* Attorney General, for respondents.

"Where a public officer is removable at pleasure, his removal may

be effected, so far as his title to the office is concerned, by a declaration of removal; but notice or knowledge is necessary to complete the removal so far as the validity of official acts is concerned." 22 R. C. L. § 287; State ex rel. Harness v. Roney (Ohio) 19 Ann. Cas. 918.

"If the governor had the power to remove him, there was no necessity for official notification to him of the removal to bring it about. The removal of itself operated a divestiture of the office, at least for the purposes of this suit. Had intermediate action taken place before notice in which Cambre had participated in ignorance of his removal, and were the validity of the action taken at that time and under these circumstances contested, a different question would arise." State v. Rost (La.) 16 So. 776.

"A person holding an appointive office, or even an elective office, created by statute, wherein is reserved to the creating power or to some other official or body the authority to remove at pleasure, holds the office subject to the exercise of this power at any time. He can claim no property or contract rights in the office, and his summary removal, if in accordance with the statute authorizing same, is a breach of no obligation or duty to him." 35 L.R.A.(N.S.) 866, note.

"It is argued that the act under consideration . . . contravenes the Bill of Rights, providing that no person shall be deprived of life, liberty or property without due process of law. But the notion that there may exist a property right in a public office is not generally accepted. The incumbent of an office has not, under our system of government, any property in it. His right to exercise it is not based upon any contract or grant. It is conferred upon him as a public trust, to be exercised for the benefit of the public. Such salary as may be attached to it is not given because of any duty on the part of the public to do so, but to enable the incumbent the better to perform the duties of his office by the more exclusive devotion of his time thereto." State ex rel. Hamilton v. Grant, 81 Pac. 795—citing authorities.

BUTTZ, District Judge. In 1922 there was a legal contest over the personnel of the state game and fish board. On April 1, 1921, the petitioner was appointed a state-wide deputy game warden by the old board, known as the Bloom-Stucke board. At a meeting of the new board, known as the Manning-Dickinson board, held at Jamestown on

April 20th, 1922, it was resolved "that all game wardens now working, including chief game wardens and their clerks, be laid off on the first day of May, 1922," and that "the secretary be instructed to notify the several game wardens of the expiration of their terms of office." The secretary, Hogue, was also a member of the old board and in sympathy with them. He acted for and as a member of each of these rival boards. That litigation resulted favorably to the new board. State ex rel. Johnson v. Bloom, 49 N. D. 890, 193 N. W. 940.

The authority of the game and fish board to remove a warden from office without preferring charges and without hearing is admitted by petitioner; and such is the law. Laws 1915, chap. 161, § 8; State ex rel. Moore v. Archibald, 5 N. D. 359, 66 N. W. 234. But he insists, (1) that the meeting of April 20, 1922, was not legally held; (2) that the board did not remove him but attempted only to temporarily suspend him which he contends it had no power to do; and (3) that he never received notice, express or implied, of his removal and continued to perform the duties of his office during May, June, July and August, and that he is entitled to his salary and expenses during that time. He brings this proceeding to compel defendants to allow his salary and expense accounts for this period and to cause a warrant to be issued in payment thereof.

There is no merit in the contention that the meeting at which petitioner was removed from office was illegally held. The president of the board has authority to call special meetings whenever, in his judgment, it becomes necessary. The record is silent as to how this particular meeting was called, but it does appear that all members and officers of the board were present and participated in that meeting without objection. The service of notice of such meeting by the president could have accomplished no more.

That the action of the board contemplated an absolute removal and not a temporary suspension is evident. While the words "laid off" were used in the resolution, immediately following is the resolution directing the secretary to notify these wardens *of the expiration of their term of office.* We can suggest no English conveying more clearly an intent to fully and finally discharge them.

The petitioner relies principally on his claim that he received no notice, either express or implied, of his removal and that having continued

50 N. D.—31.

to act in ignorance thereof the board is estopped to deny him compensation and expense account. The trial court found he did receive notice. There can, in this cause, be no trial *de novo* of the issues of fact by this court. The findings of the trial court come here with all presumptions in favor of their correctness and with the burden resting upon the party alleging error of demonstrating the existence of such error. He must be able to show this court that such findings are against the preponderance of the testimony. Jasper v. Hazen, 4 N. D. 1, 23 L.R.A. 58, 58 N. W. 454; Dowagiac Mfg. Co. v. Hellekson, 13 N. D. 257, 100 N. W. 717; Ruettell v. Greenwich Ins. Co. 16 N. D. 546, 113 N. W. 1029; Roberts v. Little, 18 N. D. 608, 120 N. W. 563; Griffith v. Fox, 32 N. D. 650, 156 N. W. 239; State Bank v. Maier, 34 N. D. 259, 158 N. W. 346; Stavens v. National Elevator Co. 36 N. D. 9, 161 N. W. 558; Richards v. Northern P. R. Co. 42 N. D. 472, 173 N. W. 778; McCormick v. Union Farmers State Bank, 48 N. D. 834, 187 N. W. 421; Gotchy v. North Dakota Workmen's Comp. Bureau, 49 N. D. 915, 194 N. W. 663; Flath v. Banker's Casualty Co. 49 N. D. 1053, 194 N. W. 739.

We are satisfied that the findings of the trial court are not against the preponderance of the evidence. The secretary of the board, Hogue, who is particularly friendly to petitioner, testifies that he "notified all game wardens working, by letter, that their term of office would expire May 1, 1922;" that such a letter was mailed to Mr. Hartung. He was unable to produce a copy of the Hartung letter but says it was similar to that written warden Hickey, which read: "At a meeting of the Game and Fish Board held at Jamestown, N. D. on the 20th, it was decided to lay off all wardens the first of May, 1922. Your term of office will expire on that date." B. J. Monoghan, former chief game warden for the first district, a witness for petitioner, testified he received a similar letter. It is one of the denominational presumptions of our statute "that a letter duly directed and mailed was received in the regular course of mail." Comp. Laws 1913, § 7936, subd. 24.

Claimant's case rests solely on his denial of having received the letter of dismissal. He met Hogue once or twice after May first and corresponded with him on several occasions, both friendly and business letters having passed, one letter referring to "the board . . .

holding up (his) money," but says no reference was made to his dismissal. He knew two rival boards were assuming to act, that litigation was then pending to determine which was the legal board, his "understanding was that the money for all the game wardens was held up," he received neither salary nor expenses for more than four months, he found it necessary to bring this action to compel payment, yet he claims never to have inquired why he was not paid, and never to have had even an intimation of the reason until the instant of giving his testimony on the trial. The legal battles of some members of the old board to retain their positions brought state-wide publicity. Other wardens, witnesses for the petitioner, admit notice through these newspaper articles.

At different times during the summer Hogue directed Hartung and other discharged wardens to perform certain official duties. It is clear that Hogue and other members of the Bloom-Stucke board purposed keeping their organization intact, performing some service, to be in position to rescind the acts of the Manning-Dickinson board and collect their salaries and expense account in the event they should be successful in their contest for these offices. Hogue testified: "The fact of the matter, you know, when they got into court I didn't know how it would work; of course I wanted to see those boys work for me, and upon appointment hold their office until after their term was out, and I was going to do what I could for them. . . . There were so many lawsuits on in regard to this proposition I don't know, or didn't know, how it would work out."

The order and judgment appealed from are affirmed.

BRONSON, Ch. J., and NUESSLE, BIRDZELL, and CHRISTIANSON, JJ., concur.

JOHNSON, J., being disqualified, did not participate. C. W. BUTTZ, District Judge, Second Judicial District, sitting in his stead.