# MICHIGAN CITY BANK, a Corporation, Respondent, v. FIRST STATE BANK OF MANVEL, a Corporation, Appellant.

## (201 N. W. 176.)

**Warehousemen — may issue creditor as security receipt for property contained in warehouse and owned by him.**

1. One who owns or controls an incorporated storage company, licensed to conduct the business of warehouseman in this state, under the provisions of article 77, chapter 38 of the Political Code (Comp. Laws, 1913, §§ 3138–3148 inclusive) and who owns the warehouse in which such business is conducted, may, under the provisions of chapter 250, Session Laws, 1917 (Uniform Warehouse Receipts Act) cause to be issued. and deliver to his creditor, as security for an indebtedness, a warehouse receipt for property actually contained in such warehouse and owned by him.

**Warehousemen — warehouse receipt operates as pledge of property without manual change of possession.**

2. The execution and delivery of such receipt operates as a pledge of the property therein described without the necessity of an actual manual change of possession of the property.

**Chattel mortgage — lien acquired by bona fide holder of warehouse receipt held superior to subsequent chattel mortgage.**

3. The lien acquired by the holder of such receipt who accepts and holds the same in good faith is, while the goods remain in the warehouse, superior to the lien of a subsequent chattel mortgage executed by the owner of the property in favor of and delivered to one having actual knowledge that such warehouseman is an incorporated storage company owned or controlled by the debtor and having no place for the conduct of such business other than the debtor's warehouse.

**Warehousemen — warehouse receipt acknowledgment warehouseman holds goods described for person to whom issued.**

4. A warehouse receipt issued in accordance with the provisions of chapter 250, Session Laws, 1917, by a warehouseman licensed to do business in this state as such, under the provisions of article 77 of chapter 38 of the Political Code, is the written acknowledgment that he has received and holds the goods therein described for the person to whom it is issued.

Note.—(1) Validity of receipt issued for warehouseman's own property, see 27 R. C. L. 963.

(2) Delivery of warehouse receipt as pledge, see 27 R. C. L. 968.

**Warehousemen — warehouse receipt must conform substantially ·to statute.**

5. A warehouse receipt must conform substantially to the provisions of § 2 of chapter 250, Session Laws, 1917.

**Warehousemen — in case at bar warehouse receipt held to comply substantially with statute.**

6. Evidence examined and *held* that the warehouse receipt involved in this case is in substantial compliance with the statute.

Opinion filed November 18, 1924.

Chattel Mortgages, 11 C. J. § 408 p. 659 n. 86 New. Waiver, 40 Cyc. p. 256 n. 74. Warehousemen, 40 Cyc. p. 407 n. 81; p. 408 n. 86; p. 410 n. 89; p. 412 n. 3, 9; p. 426 n. 26; p. 478 n. 32.

Appeal from the District Court of Grand Forks County, *Cooley,* J.

Action for damages.

From a judgment for the plaintiff and an order denying a new trial, the defendant appeals.

Reversed.

*Bangs, Hamilton & Bangs,* for appellant.

A compliance with the statute is sufficient in this state for the operation of·a public warehouse or storage company, and proper receipts issued by such public warehouse or storage company are valid and negotiable under the laws of this state. State v. Robb-Lawrence Co. 17 N. D. 257.

If in making a contract, or in the course of dealing the title of one party, or the other to the property involved in the transaction is *recognized,* and the dealing proceeds upon that basis, both parties are ordinarily estopped to deny that title, or to assert anything in derogation of it. 16 Cyc. 802.

However, to work an estoppel of this character and under such circumstances, it has been held to be necessary that the recognition of title or right be clear and unambiguous. 16 Cyc. 803.

*Geo. A. Bangs,* for respondent.

The findings of the court upon questions of fact are entitled to the same credit as the verdict of a jury. James River Nat. Bank v. Weber, 19 N. D. 702, 124 N. W. 952; Updegraff v. Tucker, 24 N. D. 171, 139 N. W. 366; Taute v. C. T. C. Co. 25 N. D. 102, 141 N. W. 124.

The pledgee's possession, to be effective either for notice or to give validity at law to the pledge, must be complete, unequivocal and exclusive of the pledgor's possession in his own right. Re Johnson, 183 Pa. 528, 38 Atl. 1029; 21 R. C. L. 644, ¶ 11.

The so-called "storage warrants" were not warehouse receipts either under the laws of Pennsylvania or of Wisconsin. *In order to be such, they must be issued by a warehouseman or one openly engaged in the business of storing property for others for a compensation.* Geilfuss v. Corrigan, 95 Wis. 651, 37 L.R.A. 166, 60 Am. St. Rep. 143, 70 N. W. 306.

To uphold the receipt as a proper warehouse document transferring the title to the property and operating as a good constructive delivery of it to the vendee, *it must in all cases distinctly appear that it was executed by a warehouseman, one openly engaged in that business and in the usual course of trade.* Shepardson v. Cary, 29 Wis. 34.

Waiver must be manifested in some unequivocal manner and to operate as such it must in all cases be intentional. 40 Cyc. 261.

Pugh, District J. This is an action for the recovery of damages for the alleged conversion of two automobiles. A jury was waived and trial had to the court. The trial court made findings of fact, conclusions of law, ordered judgment for the plaintiff and judgment was entered thereon. The defendant made motion for a new trial, specifying errors in law occurring at the trial and the insufficiency of the evidence to support the judgment, which motion was denied. Defendant appeals from the judgment and from the order denying the motion for a new trial.

The material facts as they appear from the record are these:

During the years 1919, 1920 and 1921, one B. H. Stary owned, operated and conducted a garage and garage business at Conway, sold automobiles and tractors, accessories, oils and gasoline, and in connection with his business operated a repair shop. The building in which this business was conducted is of one story, divided into three parts, and is situated in Conway, North Dakota. Automobiles were kept in the front part, the repair shop in the middle section and tractors in the rear.

A corporation named the Conway Storage Company was formed

December 27, 1919, with B. H. Stary as President, John B. Stary as Secretary and Madeline Stary as Vice President. Application was made to the Board of Railroad Commissioners for a public storage company license, and, January 5th, 1920 that Board issued such license to it.

Stary became indebted to defendant in the sum of $2000.00 which was due November 1, 1920. For the security of the payment of this indebtedness, defendant held certain notes and other collateral. On or about the 5th day of November 1920, Stary paid the interest on this indebtedness to November 1, 1920, gave a new note to defendant dated November 1, 1920. The defendant surrendered to him the collateral it then held and received in place thereof a storage receipt which appears upon the face of it to have been issued by said Conway Storage Company, and which receipt reads as follows:

Original. Negotiable Receipt. Number 104.
   Conway Storage Company,
      Conway, N. D.   Nov. 1st, 1920.
This is to certify that we have received from and hold in storage the following described automobiles and will deliver the same to First State Bank, Manvel, N. D. or order, upon the surrender of this receipt, and on payment of storage and other charges and advances as indicated hereon.

Storage from date.

Storage 3.00 per mo. for first month, or any part thereof and 3.00 per mo. for each month thereafter or any part thereof.

Minimum charge 3.00 (here follows description of the automobiles by model, serial number, trade name and value). After the figures designating the value of each is a bracket, and then follow the figures "2000.00."

                (Signed) Conway Storage Co.
                      By B. H. Stary, Manager,
                         Deliveries noted on back of this receipt.

Prior to November 1st, 1920, the Conway Storage Company and B. H. Stary were also indebted to the plaintiff, which indebtedness was represented by notes aggregating $16,800, signed by the Conway Storage Company and B. H. Stary, and secured by collateral which in-

cluded three certain warehouse receipts issued to it by Conway Storage Company, covering tractors and automobiles, which receipts were identical as to form with that issued to the defendant, but that particular receipt issued to the plaintiff under date of March 24th, 1920 is numbered 50, while the numbers of the other two receipts issued to the plaintiff are not disclosed by the record. December 9th, 1920, this indebtedness was renewed by the giving of three notes dated that day, signed by the Conway Storage Company and B. H. Stary, and also as additional collateral security. B. H. Stary executed and delivered to George Reed, one of the directors of the plaintiff, his three notes in identical sums corresponding as to amount, date and maturity, with the three notes executed by the Conway Storage Company and himself, jointly, and also executed and delivered to said Reed his chattel mortgage upon five automobiles, which included two of the automobiles described in the defendant's storage receipt. Said chattel mortgage was thereafter, by said Reed, assigned to the plaintiff. At the time of the renewal of said notes and the giving of said chattel mortgage, plaintiff continued to hold and thereafter remained in possession of the said three storage receipts which had been issued to it about nine months previous thereto, defendant was in possession of the receipt issued to it, while the automobiles described in defendant's storage receipt were in the warehouse in the location therein where defendant's cashier and said Stary had placed them.

The defendant presented its storage receipt shortly after the 9th day of December, 1920, and received thereon two of the automobiles therein described, and it is for the alleged conversion of these two automobiles this action is brought.

The trial court found that B. H. Stary was the owner and in possession of the two cars in question on the 9th day of December, 1920, that said Stary executed and delivered said chattel mortgage as such owner and while in possession thereof, and the court held that the plaintiff was entitled to recover for the amount of the damages sustained through the conversion thereof. The trial court therefore necessarily held and found that the lien of the plaintiff under its chattel mortgage was superior to the lien of the defendant asserted by reason of the storage receipt held by it upon the same automobiles.

The defendant challenges the correctness of this conclusion and main-

tains that its lien on the automobiles in question is superior to the chattel mortgage of the plaintiff. This is the decisive question in the case.

The first question presented is as to what weight and effect shall be given to the findings of the trial court on this appeal. The case is one properly triable to a jury but tried to the court by consent. It is the respondent's contention that the same force and effect must be given to the findings of the trial court as would be given to the verdict of a jury, and that if such findings are supported by some credible testimony they may not be disturbed on appeal. The rule is that in such cases the findings are presumed to be correct; that they must stand unless they are clearly against the preponderance of the testimony; that the burden rests upon the party alleging error of demonstrating the existence of such error. But this court on appeal is not precluded from weighing the evidence; and if it appears that the findings are clearly contrary to the preponderance of the evidence, they will not stand. Hartung v. Manning, 50 N. D. 478, 196 N. W.. 554 and cases cited.

The statute governing the licensing of storage companies is article 77 of chapter 38 (§§ 3138–3148) of the Political Code. Section 3138 provides: "The Board of Railroad Commissioners may license any suitable person, persons or corporations . . . to carry on the business of public storage companies or public warehousemen, who may keep and maintain public warehouses for the storage of goods, wares and merchandise, etc."

The applicant for such license is required to furnish a bond running to the treasurer of the state in the sum of $5000 with good and sufficient sureties to be approved by said Board of Railroad Commissioners, conditioned for the faithful discharge of its duties as such. Comp. Laws, § 3139.

It is also provided in said article that it shall be unlawful for any person, persons or corporations, not duly licensed as therein provided, to conduct or carry on the business of a public storage company or public warehouseman. § 3146. A penalty for violation of any of the provisions of said article 77 is provided by § 3147.

¶ (h) of section 2, chapter 250, Laws of 1917 (Uniform Warehouse Receipts Act) provides that if the warehouse receipt is issued for goods of which the warehouseman is owner either solely or jointly

or in common with others, such receipt must embody within its written or printed terms the fact of such ownership.

Section 53 of the Uniform Warehouse Receipt Act provides, "Where there are deposited with or held by a warehouseman goods of which he is the owner either solely or jointly or in common with others, such warehouseman or any of his officers, agents or servants, who knowing this ownership issues or aids in issuing a negotiable receipt for such goods which does not state such ownership, shall be guilty of a crime, and upon conviction shall be punished for each offense by imprisonment not exceeding one year or by a fine not exceeding one thousand dollars, or by both."

The Conway Storage Company had its office at Conway in the office used by B. H. Stary, who signed the receipts issued by it as "Manager." Conway was a little country town of not to exceed 300 people. There was no other place where it did do business than at the warehouse or garage of B. H. Stary using the same as its warehouse. The plaintiffs had actual knowledge through transactions with the said Conway Storage Company that it was purporting to act as a warehouseman and issuing receipts for goods held with it as such, and that Stary was its president and manager.

In this case the goods stored belonged to Stary. Stary was the president and manager of the warehouse company. The company, so far as it did business, used the garage of Stary as its warehouse. A warehouse may be such though used for other purposes, whether owned or hired, and if hired, whether of the owner of the goods deposited or a third person. Union Trust Co. v. Wilson, 198 U. S. 530, 49 L. ed. 1154, 25 Sup. Ct. Rep. 766. State use of Hart-Parr Co. v. Robb-Lawrence Co. 17 N. D. 257, 16 L.R.A.(N.S.) 227, 115 N. W. 846. While the goods belonged to Stary and were deposited by him in the warehouse, yet at the direction of the defendant they were set apart from the other goods therein, and by and with the consent of Stary the receipt was issued by the warehouse company direct to the defendant. We can see no reason why, if the defendant acted in good faith in thus transacting this business, such procedure was not in all respects proper and within the law. Surely Stary cannot be heard to complain, nor the warehouse company. Such receipt so issued by the warehouse company to the defendant was the written acknowledgment by the ware-

houseman that it had received and held the goods therein described for
the person to whom it was so issued. The receipt was a symbol of own-
ership of the goods covered by it. Vannett v. Reilly-Herz Auto. Co.
42 N. D. 607, 173 N. W. 466.

The plaintiff contends that Conway Storage Company was in fact
B. H. Stary. It insists that Conway Storage Company was merely a
pretended storage company; that it had neither warehouse nor business.
The record, however, discloses that for upwards of nine months prior
to December 9th, 1920, plaintiff had actual knowledge of the existence
of this storage company and of the issuance by it of warehouse or stor-
age receipts. It had knowledge that it had no other place of business
than the premises of Stary. Long prior to the time the warehouse
company issued said receipt to defendant it issued to plaintiff and
plaintiff received and held three storage receipts covering a large num-
ber of tractors and automobiles, pledging the same to the plaintiff as
security for the payment of promissory notes aggregating $16,800.00
due to it from Stary and the Storage Company. Said storage receipts
were identical in form with that issued to the defendant. The Storage
Company's name was signed to these notes by B. H. Stary as president,
and to the storage receipts by B. H. Stary as manager. Nor did plain-
tiff surrender its said storage receipts at the time of the renewal of these
obligations owing by Stary and the Storage Company to it on December
9th, 1920. At that time plaintiff's officers spent several hours in
Stary's place of business. And that was not their first visit there.
There can be no doubt, then, that the plaintiff had actual knowledge
of the manner in which Stary and the Storage Company transacted
their business and of the methods employed by them. This and the
plaintiff's prior dealings with Stary and the Storage Company may
properly be considered in determining the good faith of the defendant;
also as evidence that a storage business was, in reality, being conducted.

There seems to be no dispute as to what took place between Stary,
the Storage Company and defendant on the day of the issuance of the
storage receipt to defendant. The record shows that on the day in ques-
tion the defendant's cashier went to Conway; in company with Stary
he examined the cars, noted the number of them; the factory numbers
of the cars were taken down; at his request and under his direction the
cars were placed in the corner of the front room of the garage building.

A storage receipt was then issued to the bank and delivered to the cashier. Said storage receipt has since said time been and now is held by the bank. Counsel for plaintiff in his brief says, "Defendant's cashier went to Stary's place of business in Conway, and there Stary agreed with him as to certain cars that he, Stary, would issue storage receipts for such cars; that the two men went to Stary's garage, selected the cars, moved them from one side to the other, after which Stary issued the receipt."

The cashier of the defendant saw the charter of incorporation of the Storage Company and the license issued to it by the Board of Railroad Commissioners in frames which were hung on the walls of the office. Defendant offered, but was not permitted, to show what inquiries were made of Stary, and that Stary said that other automobiles and tractors were stored in the same garage or warehouse. The good faith of the defendant throughout this transaction is apparent from and is wholly unchallenged by the record. Nor does it appear from the record that either Stary or the Storage Company up to the time of the issuing of said receipt did any act incompatible with good faith in the conduct of their business.

The plaintiff also urges that the warehouse or storage receipt issued to defendant in this case, does not conform to the requirements of the statute regulating the issue of warehouse receipts, although such receipt is identical as to form with those issued previously to the plaintiff.

The legislature enacted what is known as The Uniform Warehouse Receipts Act at the Session of 1917, same being chapter 250 of Sess. Laws 1917, § 1 of that act provides that "Warehouse receipts may be issued by any warehouseman."

Sec. 2 provides that:

"Warehouse receipts need not be in any particular form, but every such receipt must embody within its written or printed terms:

a. The location of the warehouse where the goods are stored.

b. The date of the issue of the receipt.

c. The consecutive number of the receipt.

d. A statement whether the goods received will be delivered to the bearer, to a specified person, or to a specified person or his order.

e. The rate of storage charges.

f. A description of the goods or of the packages containing them.

g. The signature of the warehouseman, which may be made by his authorized agent.

h. If the receipt is issued for goods of which the warehouseman is owner, either solely or jointly or in common with others, the fact of such ownership, and

i. A statement of the amount of advances and liabilities incurred for which the warehouseman claims a lien."

The act further provides in Sec. 2 thereof, that "A warehouseman shall be liable to any person injured thereby for all damages caused by the omission from a negotiable receipt of any of the terms herein required."

An examination of the receipt in question in connection with the requirements of this section of the statute, discloses that the receipt contains the material and essential requirements of the statute, and is in substantial compliance therewith. 27 R. C. L. 962; State v. Henzell, 17 Idaho, 725, 27 L.R.A.(N.S.) 159, 107 Pac. 67; Smith Bros. Co. v. Richheimer & Co. 145 La. 1066, 83 So. 255.

For the reasons indicated, we are of the opinion that the findings of the trial court are not supported by the evidence. However, we are not satisfied that the defects in plaintiff's proof may not be supplied upon another trial. It follows that the judgment appealed from should be reversed and a new trial granted. It is so ordered.

BIRDZELL, NUESSLE, and CHRISTIANSON, JJ., concur.

JOHNSON, J. (dissenting). This is a conversion action. It was brought by the plaintiff to recover the value of two automobiles alleged to have been converted by the defendant. A jury was waived and all issues of fact were tried to the court. The court made findings of fact, conclusions of law and ordered judgment for the plaintiff for the value of the automobiles. The defendant moved for a new trial; the motion was denied and defendant appeals from the judgment.

The facts are as follows: During the years 1919, 1920 and 1921, one B. H. Stary owned and conducted a garage and garage business at Conway, North Dakota. As a part of such business, he sold automobiles, tractors and maintained a repair shop. From the record, it is

evident that Stary conducted an ordinary garage business and automobile sales establishment. The building in which his business was conducted is a one-story building, apparently built in three sections, or, as some of the witnesses put it, divided into three parts. Roughly speaking, the testimony shows that automobiles were kept in the front section, tractors in the rear and the repair shop was in the middle. Outside was a gasoline pump of the type usually found in front of the ordinary automobile garage.

On December 27, 1919, a corporation known as the Conway Storage Company was formed with B. H. Stary as president, J. V. Stary and Mrs. B. H. Stary as secretary and vice president, respectively. On January 5, 1920, the Board of Railroad Commissioners issued a warehouseman's license to this corporation, pursuant to the provisions of § 3138, ff. Comp. Laws 1913.

B. H. Stary owed the defendant $2,000.00 due November 1, 1920, secured by collateral notes. On November 5, 1920, Stary paid the interest on this indebtedness to November 1, and gave a new note dated November 1, 1920. When this transaction took place, defendant surrendered its collateral and received in lieu thereof an instrument in the form of a storage receipt, purporting upon its face to have been issued by the Conway Storage Company, by "B. H. Stary, Manager." While the respondent challenges the sufficiency or correctness of the form of this receipt, it substantially complies with the provisions of § 2, chapter 250, Session Laws 1917, being the Uniform Warehouse Receipts Act, which has been adopted in nearly all the states. The act is to be liberally construed. There is no question about the entire good faith of Nelson, who acted for the defendant in procuring the receipt. It is true, it is not correctly dated, and it is also true that the testimony shows that the defendant did not take possession of the property at the time the receipt was issued, but that if it was stored by anyone, it was by Stary, while the receipt shows upon its face that the property was stored by the defendant. These irregularities or mis-statements of fact in the receipt were doubtless innocently made. Sections 2, 50 and 51 of the Uniform Warehouse Receipts Act, supra, fix liability, both civil and criminal, for false or fraudulent statements in the receipt or for omissions therefrom.

Prior to November 1, 1920, the Conway Storage Company and B.

H. Stary jointly were indebted to the plaintiff in the aggregate sum of $16,800.00, represented by promissory notes and secured by collateral, including three warehouse receipts, issued by the corporation, covering tractors and automobiles. These receipts are identical in form with the receipt issued to the defendant. On December 9, 1920, this indebtedness was renewed in three notes executed by the corporation and Stary; at the same time, for the purpose of further securing the indebtedness, Stary executed to one Reed, a director of the plaintiff, three promissory notes corresponding with those executed by the corporation and himself, secured by a chattel mortgage on five automobiles. In this chattel mortgage, the two automobiles described in the receipt issued to the defendant were included. It will be observed that the chattel mortgage was dated December 9, and was in due course filed in the proper office, while the receipt delivered to the defendant was dated November 1, though, in fact, executed November 5, 1920. The chattel mortgage was thereafter by Reed assigned to plaintiff. When the notes aforesaid were renewed and the mortgage executed, the plaintiff was in possession of the three storage receipts issued to it and the defendant was in possession of its receipt.

Later, the defendant presented its storage receipt and received the two automobiles described therein. One of them had been sold at the time of the trial. The plaintiff claims that in seizing and refusing on demand to surrender possession of these cars, the defendant was guilty of conversion; that its claim to the cars under the chattel mortgage issued December 9, 1920, was superior to that of the defendant under its storage receipt dated November 1, 1920.

The trial court found as a fact that B. H. Stary was the owner and was in possession of the two cars in question on December 9, 1920, that being the date when the chattel mortgage was executed, and that he executed and delivered the mortgage aforesaid as such owner and while in possession of the automobiles. The court then held that the plaintiff was entitled to recover the amount of the damages sustained through the conversion of the automobiles. It seems that the trial court came to the conclusion that the Conway Storage Company was not in reality "engaged in the business of storing goods for profit;" that the Conway Storage Company did not in fact hold itself out as engaged in such business; and that the transaction amounts to no more than if Stary,

a private individual, owner of an ordinary automobile garage, without a license as a warehouseman, had issued receipts covering his own property in his own possession, reciting therein that such property was stored with himself.

This was an action properly triable to a jury, but by stipulation tried to the court. There appears to be some confusion in the brief of counsel as to the duty of this court with respect to the examination of facts in appealed cases.

1. In an action properly triable and tried to a jury, the verdict of the jury is binding upon all questions of fact, if there is any substantial legal evidence upon which the same is based.

2. In an action or proceeding tried to the district court without a jury and not properly triable de novo in the Supreme Court, the findings come like legal conclusions and are presumed to be correct; the burden is on appellant to show error and a finding based upon parol evidence "will not be disturbed unless clearly and unquestionably opposed to the preponderance of the testimony." Jasper v. Hazen, 4 N. D. 1, 5, 23 L.R.A. 58, 58 N. W. 454. This rule is reaffirmed in Griffith v. Fox, 32 N. D. 650, 156 N. W. 239. I am satisfied that this is the correct rule, certain expressions in other cases to the contrary notwithstanding. See Griffith v. Fox, supra, p. 654.

Under Subdivision 2, supra, it is our duty to affirm the judgment of the trial court, the action having been one properly triable to a jury and not properly triable de novo, unless it clearly appears that the findings are unquestionably opposed to the preponderance of the evidence. The court found that Stary, as the proprietor of an automobile garage at Conway, had possession and was the owner of the property described in the mortgage at the time of its execution: from this finding, it necessarily follows that the lien of the mortgage is entitled to priority, unless the finding be clearly and unquestionably opposed to the preponderance of the evidence.

Section 58 of the Uniform Warehouse Receipts Act defines a warehouseman as "a person lawfully engaged in the business of storing goods for profit." It was apparently the opinion of the trial court that, although the Conway Storage Company had a license from the Board of Railroad Commissioners, pursuant to § 3138, ff, Comp. Laws 1913, nevertheless, it was not "engaged in the business of storing goods for

51 N. D.—49.

profit." The cashier of the defendant testifies, on cross examination under the statute, that the only evidence of the existence of the Conway Storage Company as a business or active concern was its corporate charter and the license as a warehouseman which were displayed in the office that was connected with the garage business of B. H. Stary at Conway. There was no sign anywhere indicating that the garage or any part of it was a storeroom or a warehouse of a licensed warehouseman; there were no tags attached to the cars in question or apparently to any other cars, indicating that they were under the control of the Conway Storage Company or any warehouseman; there was nothing in that part of the garage building where the cars were placed to indicate that that was a warehouse or a part of a warehouse. In short, the appearance of the building, the arrangement of the cars and tractors therein, the general appearance of the premises, including the entrance and the back yard, indicated an ordinary garage business, but did not give any indication to the public or to any person that might go on the premises, outside of the private office referred to, that the business of a public warehouseman was being conducted thereon. It is true that the Conway Storage Company had issued storage tickets to the plaintiff some time before, and that Stary had executed in its behalf certain promissory notes. Aside from that transaction, it does not appear that any business was ever done by this storage company. Stary, the proprietor of the garage, was the manager of the corporation, licensed to operate a warehouse. It appears that by the simple expedient of moving the cars in question, under the direction of Nelson, the cashier of the defendant, from one part of the garage to another, and then executing an instrument in the form of a warehouse receipt in the name of the corporation, a storage transaction was sought to be created, with the result, now asserted, that the defendant, although there was nothing upon the premises or upon the property in question to indicate such a result might follow, had a lien upon the property prior to a mortgage subsequently executed, but without knowledge of this prior transaction. The cashier of the defendant testified that the only evidence that the premises were used or occupied by a warehouseman anywhere to be found upon the premises was the license from the Board of Railroad Commissioners to the Conway Storage Company and the certificate of corporate existence on the wall of the office; however, the door com-

municating from the part of the building where the automobiles were, with this office was being permanently closed when the witness was there in November, 1920; there was apparently no door leading from this office to the garage when the plaintiff received the mortgage the following December. When the plaintiff took the mortgage, its representatives who were on the premises saw other cars in the building; and that the room and the building had every indication of an ordinary garage; they so testified; they further say that Stary stated expressly that there were no liens or incumbrances upon the cars described in the mortgage; and that there was no tag, sign, or indication that the premises were occupied by a warehouseman. Upon these important facts there is no dispute.

The defendant claims the right to these automobiles under and by virtue of the warehouse receipt issued to it on the fifth of November, but dated on the first of November, 1920. If the defendant can maintain this position, virtually that of an owner of the property, it, of course, must be by reason of the warehouse receipt, which, upon its face, is declared to be negotiable. It becomes important, therefore, to determine whether the Conway Storage Company was a warehouseman, authorized to issue warehouse receipts within the provisions of chapter 250, Session Laws 1917, which is the Uniform Warehouse Receipts Act. Section 1 of this act provides that "warehouse receipts may be issued by any warehouseman." In § 58 of this chapter, and of the Uniform Act, a warehouseman is defined as "a person lawfully engaged in the business of storing goods for profit." It would seem to follow that a person actually engaged in the business of storing goods for profit," would nevertheless not be a warehouseman, "lawfully engaged in the business of storing goods for profit," unless such person had received a license from the Board of Railroad Commissioners, as required by article 77, chapter 38, of the Political Code, Comp. Laws 1913, being §§ 3138–3148, inclusive. In the case at bar, it seems clear on the record, as has been shown, that the Conway Storage Company did not, in fact, store goods for the public generally, or at all; if it stored any goods, it was the goods and property of the garage owned and controlled by B. H. Stary, and in a room, or, rather, in a part of the premises in which the garage business of the said Stary was conducted. I see no escape from the conclusion that the Conway Storage

Company was simply a device by which negotiable warehouse receipts were issued, to be used by Stary to facilitate his own financial transactions in connection with the garage owned and controlled by him. That the Conway Storage Company in fact stored goods for profit would seem to be an essential requirement, in view of the statutory definition, before it may successfully assert the rights of a warehouseman. Under such circumstances, the form of the receipt is not sufficient to give the character of warehouseman to the person issuing the same. Proof must be made that the party issuing the receipt was, in fact, engaged in the business of storing goods for profit. Citizens Bank v. Willing, 109 Wash. 464, 186 Pac. 1072; National Bank v. Flanagan Mills & Elevator Co. 268 Mo. 547, 188 S. W. 117; Security Warehousing Co. v. Hand, 74 C. C. A. 186, 143 Fed. 32, 206 U. S. 415, 51 L. ed. 1117, 27 Sup. Ct. Rep. 720, 11 Ann. Cas. 789. Such proof is wholly lacking in this case.

It is stated in the majority opinion that "the plaintiff had actual knowledge of the manner in which Stary and the Storage Company transacted their business and the methods employed by them." If by this it is meant to hold, in effect, that the plaintiff knew of the apparent commingling of the businesses of the Conway Storage Company and the Stary garage. I submit that the record does not justify this construction of the evidence. If such were the fact, I should have no hesitancy in holding that the plaintiff is not in a position at this time to challenge the Stary transaction with the defendant bank. The trial court evidently found to the contrary and I think the evidence amply supports the finding.

I felt some hesitancy as to the right of the plaintiff to challenge the transaction because of the fact that the evidence shows that it had had business dealings with the Conway Storage Company prior to the mortgage transaction of December, 1920. There was put in evidence, as a part of the cross examination of one of defendant's witnesses, Exhibit 3, which purports to be a negotiable warehouse receipt of the Conway Storage Company, dated March 24, 1920, in form identical with that issued to the defendant, covering five tractors of a certain make. No automobiles are included in this receipt. It does not appear that any of the plaintiff's officers or employees ever were at the place of business of the Storage Company or at the Stary garage at Conway.

until subsequent to the date of this receipt. It appears that Stary not only operated a repair shop and a garage, including a department for the sale and distribution of automobiles, but that he sold and repaired tractors. When the various transactions involved in this ligitation took place, there were tractors in the Stary garage at Conway, but whether in storage with the Conway Storage Company or in the garage operated by Stary, does not appear.

In the case at bar, as has been pointed out, there is no evidence that the Conway Storage Company held itself out to the public and in fact received goods for storage for profit. While the record shows that the plaintiff, on the occasion referred to accepted three storage receipts from Stary, purporting to have been issued by the Conway Storage Company, there is no evidence that any officer or agent of the plaintiff at any time, prior to August, 1920, acquired knowledge, or the means of knowledge, of the fact that the Storage Company and the Stary garage were operating in the same building, on the same premises, under the same management, and without any indication to the public that the garage, or any part thereof, was in fact used or operated by a person engaged in the business of a public warehouseman. In August, 1920, the cashier of the plaintiff was upon the premises of the Stary garage, but saw nothing to indicate that the Storage Company was doing a storage business at any place in Conway. It does not affirmatively or by necessary or fair inference appear that the plaintiff bank had knowledge, actual or constructive, of the true situation on March 24, 1920, or at any time prior to August, 1920. For aught that appears to the contrary, the plaintiff, on March 24, 1920, and at all times subsequent thereto, up to August, 1920, did believe that the Conway Storage Company was, in fact, operating a public warehouse at Conway, independent of the Stary garage: nothing in the record indicates that the plaintiff, or any of its agents, acquired knowledge of circumstances prior to August, 1920, that showed such belief to be contrary to the true facts. Whether the plaintiff can be said to have acquired knowledge of the true situation in August, 1920, when its cashier apparently for the first time, as far as the record shows, was in the Stary garage, is, in my judgment, not very material. When it next renewed the indebtedness, on December 9, 1920, the plaintiff took a mortgage instead of relying on warehouse receipts as security.

The conduct of the plaintiff in no manner influenced, in fact or in legal contemplation, the conduct of the defendant: the latter to no extent changed its position as a result of such conduct. The latter did not rely upon anything the plaintiff did or failed to do. There are no facts in the record on which an estoppel or a waiver in behalf of the defendant and against the plaintiff can be predicated. "Estoppel is the inhibition to assert it (right) from the mischief that has followed," 40 Cyc. 256–258. There was no representation by plaintiff by word or act: no "mischief" followed defendant's conduct to inhibit the assertion of its rights; there was no misleading silence; and either the representation or the silence seems essential as the legal cause of estoppel by conduct. Bigelow, Estoppel, 602.

On December 9, 1920, officers and agents of the plaintiff were in the garage; the automobiles described in the mortgage, as well as other cars and property customarily found in a public garage, were standing therein; the door between the garage and the small office building had probably been closed, leaving apparently only an outside entrance to the office; there was absolutely nothing to indicate to them or to any other person that might enter the building that the premises were not those of an ordinary garage found in every city and almost every hamlet in North Dakota. The record does not disclose that anything came to their notice at that time that did not justify the assumption on their part that the Conway Storage Company had its warehouse and its place of business elsewhere. Neither is there anything in the record to indicate that the plaintiff failed to use that diligence to acquaint itself with the facts and the true situation which the law might require of it because of prior dealings with Stary and receipt by it of instruments purporting upon their face to be negotiable warehouse receipts issued by the Storage Company and delivered to the plaintiff as collateral security. The representative of the plaintiff inquired of the proprietor of the garage, Stary, who was also, to plaintiff's knowledge, the manager of the storage company, if there were any liens on the automobiles standing in the garage; Stary assured him that there were none. Here was in effect, an assurance from the manager of the Storage Company that it did not have the automobiles in question in storage. The plaintiff was not required to presume that Stary would act wrongfully; it had a right to rely upon his statement: Sec. 7936–

1, Comp. Laws, 1913; what he said was corroborated by what plaintiff's agent saw on the premises. It seems to me that the plaintiff had a right to rely upon the presumption that the articles and merchandise in the garage, apparently in the possession and under the control of Stary, the garage keeper, at the time the mortgage was made, were in fact owned by him. Sec. 7936-11, supra. When the cashier of the defendant was in the Stary garage and procured the receipt and ordered the automobiles in suit moved to another place therein, he understood the situation thoroughly. It might well have appeared possible to him that another member of the public, relying upon the apparent fact that Stary was in possession of the automobiles and the absence of signs indicating possession thereof by any person as a warehouseman, would extend credit to Stary and accept as security a mortgage upon property seemingly owned and possessed by him. Defendant did nothing to remove the equivocal character of the situation in the Stary garage with respect to the possession of the automobiles in suit. Defendant's cashier says he did not require any tags or signs to indicate that the cars were in storage. I think defendant must fail in its claim that it holds a warehouse receipt issued by a warehouseman, as defined in the law of this state.

Can it succeed on the theory that the cars were validly pledged? In my view of the record, the transaction between the defendant and Stary amounts, at most, to an attempt to pledge physical property as security to an indebtedness owing by Stary to the defendant, without change of possession. Comp. Laws, 1913, § 6772. In the view of the trial court, the debtor was permitted to retain possession of the property sought to be pledged as security for the indebtedness in such a way and under such circumstances as to justify the public, who dealt with Stary, the garage keeper, and who came upon the premises occupied by his garage, to believe that the property was his and to rely upon the public records and upon the statements of Stary, the party in possession, that such property was not incumbered.

It seems to me that the defendant and appellant has failed to show that the finding of the trial court to the effect that Stary was the owner and was in possession of the property is clearly "opposed to the preponderance of the testimony," within the rule heretofore stated. Undeniably, Stary would be estopped from questioning the right of the

defendant to enforce the pledge or to treat the instrument as a negotiable warehouse receipt. The contest here, however, is between the holder of this purported receipt and a third party who dealt with Stary and relied upon the apparent fact that Stary was the owner and in possession of the property described in the mortgage. I do not believe that there are any facts or circumstances in the case to estop the plaintiff from relying upon the recording laws, the statutes requiring actual change of possession in order to effect a valid pledge, and the statutes requiring an actual and continued change of possession in order to transfer title to property as against purchasers or incumbrancers in good faith and without notice.

It is suggested in answer to the argument of the respondent, that the Conway Storage Company is in fact B. H. Stary, that in the absence of a statute, a warehouseman may issue receipts on his own property in his warehouse and may use such receipts as collateral to secure payment of loans to himself. It should be noted in this connection that under Section 53 of this act, it is provided that if a warehouseman issue receipts upon property of his own in his warehouse, without stating such fact in the receipt, he shall be guilty of a crime. In the case at bar, the receipt does not contain a statement of this fact and therefore, if the evidence justified the court in finding that Stary and the Storage Company was one and the same person, the validity of the instrument as a negotiable warehouse receipt, giving to the holder a lien superior to that of the plaintiff's mortgage, might well be seriously questioned. The purpose of requiring the receipt to state the fact as to the ownership of the goods by the warehouseman in himself is thus stated by the commissioners of uniform state laws:

"As some abuses have arisen from warehousemen issuing receipts on their own goods, it seemed wise that when they issued negotiable receipts in this way, the document should carry notice of the fact on its face."

The effect of an omission from the receipt of the terms required to be inserted therein by Sec. 2 is discussed in Smith Bros. Co. v. Richheimer & Co. 145 La. 1066, 83 So. 255. The Louisiana Court says, among other things, answering the contention, that the penalty was the only consequence of an omission of any of such terms; "we do not subscribe to that opinion unqualifiedly. The statement that the warehouse-

man shall be liable in damages for an omission of any of the 'essential terms' from 'a negotiable receipt' cannot mean that an instrument may be a valid negotiable receipt, notwithstanding the omission of any of the terms that are declared to be essential to its validity. Our opinion is that the expression in that paragraph, 'negotiable receipt,' means a receipt that would be a valid, negotiable receipt except for the omission by the warehouseman of one or some of the essential terms stated in the preceding paragraphs." I do not deem it necessary in this case to decide what the effect of such omission is or to express an opinion thereon.

It seems to be the rule that the delivery of a valid warehouse receipt carries with it the title to and the constructive possession of the goods. Vannett v. Reilly-Herz Auto Co. 42 N. D. 607, 173 N. W. 466. These pass to every transferee in good faith. 40 Cyc. 412. The public character of the warehouse, the knowledge which the public is presumed to acquire from the fact that a person holds himself out as a public warehouseman, imparts to the general public, in a measure, constructive knowledge somewhat analogous to that presumed to be acquired from the fact that instruments concerning liens or transfers of personal and real property have been filed or recorded in a public office, in form and manner as prescribed by the general recording acts. As I read the record, there is nothing in the evidence that justifies us in holding, contrary to the findings of the trial court, that plaintiff had such knowledge of facts and circumstances as can be said to take the place of that constructive notice imparted to the public from the fact that a person holds himself out to the public as a warehouseman. When the law gives this character and effect to a warehouse receipt, it does so upon considerations of public policy and commercial convenience. It would seem equally to comport with sound public policy to require substantial compliance with the laws regulating warehousemen and the issuing of negotiable warehouse receipts. In no other way can the public be protected against fraud or imposition; and otherwise, the effect of the recording laws and the statutes concerning fraudulent transfers would be to some extent nullified. It seems to me that it would not be in the interest of legitimate commercial intercourse to lay down a rule which, in effect, would make it possible and legal for the proprietor of an ordinary garage, without any public

notice or indicia of his character as a warehouseman to store automobiles and tractors and merchandise owned by him in the capacity of a garage proprietor, with himself as a warehouseman, and to put in circulation instruments purporting to be negotiable warehouse receipts covering property therein. I am convinced that such was not the intention of the legislature or the purpose of the Uniform Warehouse Receipts Act.

· I think the judgment of the trial court should be affirmed.